551 A.2d 899

**J. Laurence MILLISON**

v.

**Adele WILZACK, et al.**

**No. 571, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Jan. 9, 1989.

Certiorari Denied March 8, 1989.

David M. Williams, Chestertown, for appellant.

Ann Marie Debiase, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellees.

Argued before BISHOP, BLOOM and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This appeal presents squarely, for the first time, the question of which, if any, statute of limitations applies to an action of inverse condemnation.[1] We hold that the three year general statute of limitations prescribed by Maryland Courts and Jud.Proc.Code Ann. § 5–101 applies; consequently, we will affirm the judgment of the Circuit Court for St. Mary's County. While this renders it unnecessary that we decide whether appellant's action was also barred by *res judicata*, we will address his claim that the court erred in refusing to permit him to amend his complaint.

This is a continuation of the controversy which erupted between J. Laurence Millison, appellant, and the Secretary of Health and Mental Hygiene, one of the appellees herein, in the 1970's, resulted in litigation in 1974. The first round, at least, was resolved by this Court's Opinion in *Millison v.*

---

1. In *Ungar v. State*, 63 Md.App. 472, 485 n. 12, 492 A.2d 1336 (1985), *cert. denied*, 475 U.S. 1066, 106 S.Ct. 1379, 89 L.Ed.2d 604 (1986), by way of dicta, we observed:
 We are of the view that count Six of the claim is likewise time barred. When suit was filed, Ungar no longer retained an interest in the property and the restriction on the property had long since been lifted. Although couched in terms of inverse condemnation, when reduced to its simplest form, Count Six is no more than a claim for damages. Given the purpose of the statute of limitations, *Walko Corp. v. Burger Chef*, 281 Md. 207, 378 A.2d 1100 (1977), *Decker v. Fink*, 47 Md.App. 202, 422 A.2d 389, *cert. denied*, 289 Md. 735 (1981), we perceive no reason to treat this action differently than other actions not couched in constitutional terms, for damages.
 This observation was made in the context of discussing the effect of the three-year general statute of limitations, *see* Maryland Courts & Jud.Proc.Code Ann. § 5–101, upon the viability of certain counts of Ungar's complaint. Although the facts here are different than those alleged in Ungar's inverse condemnation count, it is obvious that we recognized that the way an action is characterized does not determine which statute of limitations applies to that action.

*Secretary of Health and Mental Hygiene,* 32 Md.App. 165, 359 A.2d 247, *cert. denied,* 278 Md. 728 (1976) (*Millison I* ). As *Millison I* details, the genesis of the controversy was May, 1966, when appellant purchased a tract of land in St. Mary's County. Part of the land had previously been subdivided into 32 lots and the subdivision plan had been approved by the County Health Officer. Although appellant had the subdivision plan reapproved after the purchase, he did not cause it to be recorded in the St. Mary's Land Records until June 7, 1974. 32 Md.App. at 166–67, 359 A.2d 247.

Appellee Maryland State Department of Health and Mental Hygiene promulgated, pursuant to Maryland Code Ann. Art. 43, § 1F(d),[2] and adopted, effective March 3, 1972, "Regulations Governing Water Supply and Sewage Systems in the Subdivision of Land", designed to assure that acceptable provisions would be made for water supply and sewage disposal in subdivisions under the direction of the Secretary. *See* COMAR 10.03.28 (effective July 15, 1988, recodified as COMAR 26.04.03.) Subsection .02J (at present, COMAR 26.04.03.02J) of the regulation provided that a preliminary plan would become null and void if a record plat or subdivision plan is not filed within six months of its approval. Subsection .07 (present COMAR 26.04.03.08) provided:

> Any preliminary plan or record plat of a subdivision which has been submitted to the approving authority before the date of adoption may not be required to comply with these regulations, if final approval and recordation, when required by law, is completed no later than 6 months from the date of adoption.

Appellant having failed to file the subdivision plan within the six month period, the Secretary filed an action for declaratory and injunctive relief against him. Following a trial, the court enjoined the sale or conveyance of lots in the subject property without the prior approval of the Secre-

---

**2.** Now codified as Maryland Health Gen'l Code Ann. §§ 2–104(m) and 2–105(a).

tary; declared that the regulations set out above were inapplicable to the subject property; and declared that appellant's subdivision plan was valid. Both parties appealed.

This Court reversed the order enjoining the sale or conveyance of the lots and modified the declaratory relief to reflect that the subdivision plan was subject to the Regulations and, further, to order that its recordation, being null and void, be expunged from the plat book records for St. Mary's County. 32 Md.App. at 173–74, 359 A.2d 247. Appellant's petition for Writ of Certiorari was denied by the Court of Appeals on September 20, 1976.

The controversy apparently lay dormant until 1987 when, by letter dated October 20, 1987 and citing *Millison I*, appellant sought from the Maryland State Department of the Environment "compensation or damages" for the "taking" of his property. Having been informed in a letter dated November 2, 1987 of the Attorney's General's opinion that the application of COMAR 10.03.28.07 to appellant's property did not "amount to a 'taking' in the constitutional sense" and, therefore, that appellant was not due any compensation or damages, appellant filed a suit,[3] sounding in inverse condemnation, against Adele Wilzack, Secretary, Maryland State Department of Health and Mental Hygiene, Martin W. Walsh, Jr., Secretary, Maryland State Department of the Environment, and the Maryland State Department of the Environment, appellees. Having alleged, essentially as it are set out in the Opinion, the sequence of events that culminated in *Millison I*, he averred:

---

**3.** The action was originally filed in the Circuit Court for Baltimore City, where it was met by appellees' motion to dismiss on grounds, *inter alia*, of improper venue. The motion to dismiss on venue grounds was denied; however, the court ordered the case transferred to St. Mary's County, finding that the "complaint for Inverse Condemnation is in essence the same as a suit for eminent domain, the proper venue [for which] is in the jurisdiction where the subject property is located."

That as a direct and proximate result of the aforegoing, the plaintiff has been denied all reasonable beneficial and economical use of the land known as the Tarkhill Subdivision, aforesaid, and has been denied his expected economic investment by not being able to continue with the sale of said lots, amounting to a taking of property without just compensation, in violation of the Fifth Amendment of the Constitution of the United States of America, as extended and applied to the States through the Fourteenth Amendment of the United States Constitution....

He sought "just compensation" in the amount of Three Million Dollars ($3,000,000.00) from the defendants.

Appellees moved for summary judgment on two grounds: (1) that the action was barred by limitations and (2) that it was barred by the doctrine of *res judicata.* After a hearing on the motions, the trial court agreed with appellees and granted their motions on both grounds. This appeal followed.

As he did below, appellant argues that the three-year statute of limitations does not apply; alternatively, he asserts that his cause of action did not accrue until appellees denied his request for "just compensation" or until a court of competent jurisdiction has determined that there had been a taking in the constitutional sense. The former argument proceeds on appellant's perception that there is no distinction between an eminent domain proceeding and one for inverse condemnation and, therefore, is designed to avoid the application of any statute of limitations to his cause of action. Although the latter arguments assume the applicability of a statute of limitations to his action, they seek to forestall the application of that statute to bar his action. We will address each argument in turn.

Contrary to appellant's contention, there is a real, and not an illusory, distinction between eminent domain proceedings and proceedings in inverse condemnation. And the distinction is well-settled. Indeed, it was eloquently stated in *Agins v. Tiburon,* 447 U.S. 255, 258 n. 2, 100 S.Ct. 2138, 2140 n. 2, 65 L.Ed.2d 106 (1980), citing and quoting *United*

*States v. Clarke*, 445 U.S. 253, 255–258, 257, 100 S.Ct. 1127, 2139–40, 2140, 63 L.Ed.2d 373 (1980):

> Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property.... Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." (Citations omitted)

This distinction has been recognized in Maryland. *See QC Corp. v. Maryland Port Admin.*, 68 Md.App. 181, 202, 510 A.2d 1101 (1986), *rev'd on other grounds*, 310 Md. 379, 529 A.2d 829 (1987); *Ungar*, 63 Md.App. at 481–82, 492 A.2d 1336.

The distinction between eminent domain and inverse condemnation is also implicit in Title 12 of Maryland Real Property Code Ann. and Subtitle U of the Maryland Rules of Procedure. Thus, § 12–101 is explicit in providing that "all proceedings for the acquisition of private property for public use *by condemnation* are governed by the provisions of this title and of Subtitle U of the Maryland Rules." (Emphasis added). Similarly, Rule U1. states that: "All proceedings for acquisition of property *by condemnation* shall be conducted in conformity with this subtitle." (Emphasis Added) Rule U2. goes on to define the parties to a condemnation proceeding as:

a. Plaintiff.

A proceeding for condemnation shall be brought *by the state, municipal or other corporation, commission, board, body or person seeking to have the property condemned,* and a party seeking condemnation shall be designated as plaintiff.

b. Defendants.

*A proceeding for condemnation shall be brought against all persons whose interest in the property is sought to be condemned,* including any spouses having an inchoate right of dower, whether such persons are

known or unknown, and such persons shall be designated as defendants. (Emphasis Added)

Neither Title 12, nor the U Rules provides that proceedings may be initiated by a property owner who believes that his property has been taken, either by condemnation or by virtue of proceedings or governmental action short of condemnation.

Despite the difference noted, the critical elements of both actions are essentially the same. In eminent domain proceedings, "[t]he government files suit against the property owner to condemn the property; the property owner obtains judgment for the fair value of what is taken." *QC Corp.*, 68 Md.App. at 202, 510 A.2d 1101. On the other hand, in inverse condemnation proceedings, the government does not file suit; rather, the property owner, because of governmental action which he perceives results in a taking of his property, as, for example, the application of a governmental regulation upon his property, sues the government to recover compensation for the taking. *Id.* In the case of eminent domain proceedings, the filing of suit acknowledges that the property has been, or will be, taken; thus, except in those cases where the property owner challenges the condemnation authority of the government, the only issue to be determined in an eminent domain case is what constitutes "just compensation". In inverse condemnation proceedings, whether the property has been taken and what constitutes "just compensation" are both at issue: to recover "just compensation" for his property, the property owner must necessarily establish that his property has been taken.[4]

---

**4.** In litigating the "taking" issue, it is necessary to be mindful of the "recognized distinction between alleged 'takings' in the exercise of the police power and alleged 'takings' by virtue of some other form of government action." *QC Corp.*, 68 Md.App. at 203, 510 A.2d 1101. With respect to the former situation, the rule has been stated:

"A regulation which prohibits a beneficial use of private property constitutes a fair exercise of the police power if public interest generally requires it and the regulation is reasonably necessary to achieve the public goal without being unduly oppressive upon individuals." ... If the exercise of the police power is fair, compen-

 The analysis of the distinction between eminent domain and inverse condemnation proceedings, and, in particular, the *Agins* characterization of the latter proceedings, provides a framework in which to determine the applicability of statutes of limitations to such proceedings. As we have already pointed out, we recognized in *Ungar, see* n. 1 *supra*, that it is not the manner in which an action is characterized, but, rather, its essential characteristic, that determines whether a statute of limitations applies. We continue to adhere to that view. Moreover, notwithstanding the differences between the allegations in *Ungar* and those in the instant case, we now make explicit that which was mere suggestion in *Ungar*, that "when reduced to its simplest form" a claim for inverse condemnation is no more than a claim for damages. We are persuaded that the requirement, implicit in an inverse condemnation action, that the property owner prove that his property has been taken as a precondition to his entitlement to just compensation does not make the action any less one for damages; in any action for damages, the plaintiff must prove that upon which his claim for damages is predicated. Nor are we persuaded that couching the action in constitutional terms somehow changes its nature. *See Board of Regents v. Tomanio*, 446 U.S. 478, 485–93, 100 S.Ct. 1790, 1795–1800, 64 L.Ed.2d 440 (1980); *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1384, 91 L.Ed. 1789 (1949); *Horn v. City of Chicago*, 402 Ill. 549, 87 N.E.2d 642, 649 (1949); *Ranch 57 v. City of Yuma*, 152 Ariz. 218, 731 P.2d 113, 117 (App.1986). *See also Burnette v. Grattan*, 468 U.S. 42, 45–6, 104 S.Ct. 2924, 2927, 82 L.Ed.2d 36 (1984);

---

sation for diminution in value caused by the regulation is not required, *Penn Central Transportation Company v. New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), even if the property is destroyed. *Bureau of Mines v. George's Creek*, 272 Md. 143, 321 A.2d 748 (1974). (Some citations omitted)

*Ungar*, 63 Md.App. at 481–82, 492 A.2d 1336, quoting *Md.–Nat'l Cap. P. & P. Comm'n v. Chadwick*, 286 Md. 1, 9, 405 A.2d 241 (1979). *See also Maryland Port Admin. v. QC Corp.*, 310 Md. 379, 389, 529 A.2d 829 (1987).

*Widgeon v. Eastern Shore Hospital Center,* 300 Md. 520, 531, 479 A.2d 921 (1984).

We hold that an action in inverse condemnation may be barred by limitations and, further, given its essential nature, there being no specific statute applicable to such actions, the limitations period prescribed by § 5–101 applies.[5] In so doing, we find unpersuasive appellant's attempt to fit an inverse condemnation action into an eminent domain one and, necessarily, the rationale of those cases in which it has been held that there is no statute of limitations pertaining to cases involving the question of whether a "taking" has occurred. *See* for example *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 348 P.2d 664 (1960).

We now turn to a consideration of whether, given the facts of this case, appellant's inverse condemnation action is barred by the provisions of § 5–101. That section provides:

A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

We start with the proposition that an action accrues when all of its elements have occurred, *Berman v. Karvounis,* 308 Md. 259, 268, 518 A.2d 726 (1987); *Trimper v. Porter-Hayden,* 305 Md. 31, 42, 501 A.2d 446 (1985), and when the plaintiff knows, or, through the exercise of due diligence, should have known, *Poffenberger v. Risser,* 290 Md. 631, 636–38, 431 A.2d 677 (1981), that they have occurred.

---

**5.** Appellant urges that if statute of limitations applies, § 5–103, which prescribes a 20 year limitations period for adverse possession should apply. We reject that argument for the reasons expressed in *Ranch 57 v. City of Yuma, supra.* That case involved a claim quite similar to the one made here—that the application of a zoning ordinance restricted the development of the landowner's property. 152 Ariz. at 221, 731 P.2d at 116. The Arizona Court of Appeals declined to apply the adverse possession statute of limitations, noting that there had been no physical intrusion on the landowner's property. 152 Ariz. at 221–22, 731 P.2d at 116–17.

There is, in this case, no question raised concerning when the regulations, which form the basis for appellant's claim that his property was taken, were promulgated or finally determined to be effective. Nor is there a question concerning when appellant became aware of the impact of the regulations upon his property. As to the former, the record is clear that the regulations were promulgated in 1972. They were finally determined to be effective in 1976, either when this Court's decision in *Millison I* was filed, the Court of Appeals having denied certiorari that same year, or when, pursuant to that Opinion, appellant's subdivision plan was expunged from the Land Records on August 2, 1976. Appellant does not argue here, as, indeed, he could not, that he was not aware, at least as early as August 2, 1976, of the effect of the regulations on his property. The record reflects that, inasmuch as one of the arguments he advanced in *Millison I* was that "the Secretary's regulations arbitrarily and illegally deprive[d] him of a reasonable use of his property without due process of law," *id.*, 32 Md.App. at 170, 359 A.2d 247, he was aware of their effect much earlier.

To avoid the sanction of the statute of limitations, appellant argues, relying upon Maryland Real Property Code Ann. §§ 12–102 and 12–108, that "[t]he three requisites of the 'taking' element under the statutory scheme—payment made or tendered; security, if any required, given; and possession taken with actual appropriation to the public purpose—had not been fulfilled." Thus he asserts, until the State denied his request for just compensation and/or a court of competent jurisdiction has determined that his property had been taken, his action for inverse condemnation could not have accrued.

The fallacy in appellant's position is his continued reliance upon principles applicable to eminent domain, rather than inverse condemnation, proceedings. That he relies upon such principles is made manifest, not only by the arguments in his brief, but by the cases, or portions thereof, upon which he relies to support the proposition he posits. *Mayor*

*and City Council of Baltimore v. Baltimore Football Club, Inc.*, 624 F.Supp. 278 (Dist.Md.1985), for example, involved an attempted condemnation by the City of Baltimore of the Baltimore Colts football team. Although *First English Evan. Lutheran Ch. v. Los Angeles Cty*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), is an inverse condemnation case, it does not, even remotely, stand for the proposition for which it is cited. Indeed, it actually supports appellees' position. In the first place, neither the applicability of a statute of limitations to the action, nor the accrual of the action was directly at issue;[6] the issue presented was "whether the Just Compensation Clause requires the government to pay for 'temporary' regulatory takings." 107 S.Ct. at 2385. In the second place, in view of our holding that inverse condemnation is different from eminent domain, the portion of the opinion cited by appellant—the paraphrasing of *Danforth v. United States*, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939) as follows: "... in the context of *condemnation proceedings* a taking does not occur until compensation is determined and paid ..." (emphasis added), 107 S.Ct. at 2388,—simply does not assist him.[7] At issue in *Williamson and Co. Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S.

---

**6.** It is significant that the action was filed a little more than a month after the enactment of the ordinance, which the plaintiff claimed effected a taking of its property, prior to any adjudication of the taking issue. 107 S.Ct. at 2382. There is no indication in the opinion that the plaintiff made a request for just compensation, which was denied, prior to filing suit.

**7.** We are aware that the Court also recognized that "[t]hough, as a matter of law, an illegitimate taking might not occur until the government refuses to pay the interference that effects a taking might begin much earlier and compensation is measured from that time," 107 S.Ct. at 2389, n. 10, citing *Kirby Forest Industries, Inc. v. United States*, 467 U.S. 1, 104 S.Ct. 2187 (1984). In the latter case, it was held that the physical occupation of land by the government entitles the owner "to bring an 'inverse condemnation' suit to recover the value of the land *on the date of the intrusion by the Government*." (Emphasis added) 467 U.S. at 5, 104 S.Ct. at 2191. Appellant did not specifically rely upon this observation and, in any event, we do not believe that it requires the result appellant seeks.

172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) was whether a § 1983 action was ripe for adjudication in the Federal Courts. It was in this context that the Court stated that no constitutional violation occurs until just compensation has been denied. While we agree that the principles expressed in these cases are certainly applicable in the eminent domain context and, under appropriate circumstances, may be relevant to inverse condemnation proceedings, *See U.S. v. Dickinson*, 331 U.S. 745, 749, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1949), under the circumstances here presented, they are not.

Since, as we have already reported, the action claimed to constitute a taking occurred in this case, not later than August 1976, at which time appellant was aware of it and its probable effect on his property. Nevertheless, appellant did not file suit until more than three years later. Therefore, we hold that appellant's action for inverse condemnation is barred.

■ During the argument on appellees' motions for summary judgment, appellant mentioned other regulations as a possible basis for his cause of action. Specifically, he referred to the Chesapeake Bay Critical Area Protection Program, *see* Maryland Natural Resources Code Ann. §§ 8–1801–1816. He argued that these regulations, when considered together with COMAR 10.03.18.07, so burdened his property as to render what had been a "temporary taking", a "permanent" one. At no time prior to the hearing did appellant amend his complaint to include any allegations concerning the Chesapeake Bay Critical Area Protection program and, although he acknowledged at the hearing that the issue had not expressly been pleaded, he did not seek leave to amend at that time.

Notwithstanding the foregoing, appellant argues, relying upon the policy of the Maryland Rules to allow amendments freely, that

An amendment alleging facts to show the impact of the new Chesapeake Bay Act upon appellant's property

would have necessitated implementation of discovery procedures to determine the exact nature of impact and crucial dates from which accrual of a cause of action could be determined. An amendment could also provide an appropriate allegation that appellant has continuously owned the property from 1966 to the present. The amendment should have been permitted.

The short answer to appellant's contentions is that the court did not prevent the amendment; appellant could have amended his complaint at any time prior to the hearing. *See* Maryland Rules 3–341. And, absent a request for a continuance for the purpose of amending the complaint, the court was not required, nor could it have been expected, to anticipate that appellant wished to amend. Furthermore, a ruling on a motion for summary judgment is a ruling upon the pleadings, depositions, answers to interrogatories, admissions and affidavits, *see* Maryland Rule 2–501(e), that are before the court; it is not a ruling upon allegations which may have been, but were not, properly presented to the court.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.