684 A.2d 40

**DUKE STREET LIMITED PARTNERSHIP**

v.

**BOARD OF COUNTY COMMISSIONERS OF CALVERT COUNTY, Maryland.**

No. 1877, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Nov. 1, 1996.

38

John C. Murphy, Baltimore (Jack G. Upton, Prince Frederick, on the brief), for Appellant.

Richard T. Colaresi (Northrop, Walsh, Radcliff, Becker & Colaresi, on the brief), Bowie, for Appellee.

Argued before MURPHY, SALMON and EYLER, JJ.

EYLER, Judge.

Appellant, Duke Street Limited Partnership, was formed for the purpose of developing a parcel of land in Prince Frederick, Maryland. It appears that things did not go as well as appellant had hoped. The result was a suit against appellee, the Board of County Commissioners of Calvert County, that, on appeal, requires us to address the question as to when a cause of action accrues for the unconstitutional taking of property.

The suit alleged such a taking and contained four counts. The first three sought damages for (1) violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article III, § 40 of the Maryland Declaration of Rights; (2) denial of substantive due process; and (3) violation of 42 U.S.C. § 1983. Count four sought a declaration that the deed executed by appellant conveying the property in question to appellee was invalid for lack of consideration, and that appellant was entitled to possession of the property.

The Circuit Court for Calvert County entered summary judgment in favor of appellee on the following basis: (1) all claims were barred by limitations, (2) appellant had failed to exhaust administrative remedies, (3) there was no violation of substantive due process as a matter of law, and (4) the deed from appellant to appellee was valid. Appellant appeals from that judgment.

Appellee cross-appeals and, while not challenging the judgment entered in its favor, asserts that a pre-judgment ruling by the trial court invalidating Calvert County Zoning Regulation § 6–4.01A should be vacated, and that appellee's motion to dismiss should have been granted.

Appellant presents the following two questions for our consideration:

1. Did a dispute about material facts preclude the granting of summary judgment on the grounds of limitations?

2. Should the action have been dismissed for failure to exhaust administrative remedies?

We affirm the decision of the trial court because the causes of action are barred by limitations and, consequently, we have no need to decide the other issues raised on appeal. We also vacate the order of the trial court invalidating Calvert County Zoning Regulation § 6–4.01A, without deciding the issue, for reasons discussed below.

## I.

### Facts

The basic facts are not in dispute. On September 13, 1988, appellant acquired a tract of land containing approximately 10.5 acres fronting on both Route 2–4 and Duke Street in Prince Frederick, Calvert County, Maryland. Prior to purchasing the land, appellant prepared and had approved by the Calvert County Planning Commission (Planning Commission) a subdivision plan for the property which created a lot of 3.9232 acres (lot one) and which was shown on a subdivision plat recorded among the Plat Records of Calvert County. After the purchase, appellant proceeded to develop the remainder of the property (lots two and three), fronting on both Route 2–4 and Duke Street.

During the early stage of the development effort for the remainder of the property, appellant was advised by appellee that in order to obtain approval of the proposed project appellant would have to construct two streets on its property that met certain construction standards, and that the street intersecting with Route 2–4 would have to be dedicated as a public street. The requirements were contained in a document dated February 14, 1989, submitted to appellant by appellee.

During the same time frame, appellee was in the process of adopting a Master Plan for Prince Frederick. As adopted in July 1989, the Prince Frederick Master Plan included a road system depicting a new street intersecting with Route 2–4 in approximately the same location as the street referred to in appellant's plan. The Master Plan also depicted a crossover of Route 2–4 at its intersection with the new street.

Appellant entered into a purchase and sale agreement dated December 28, 1988, to sell approximately 4.5 acres of the property, to close within 180 days of the date of the agreement. The agreement was subject to certain contingencies, including subdivision approval, that roads and intersections shown on a final site plan would be constructed to County and State standards, and that "the final site plan shall show a crossover through the median of Route 4 directly across from the access road on the final site plan."

Appellant submitted preliminary subdivision plans and a plat in March 1989 and appellee's Planning Department and Commission approved the plan on June 23, 1989. The plan showed the two streets mentioned above, one intersecting with Route 2–4, now named Monitor Way, and the other intersecting with Duke Street, now named Merrimac Way. Because Route 2–4 is a divided highway, a crossover was needed to allow traffic maximum access between Monitor Way and Route 2–4. The subdivision plan described several scenarios, ranging from a limited crossover to a full crossover. It appears from the record that both appellant and appellee desired the crossover to be built, since both parties would benefit from it.

Because Route 2–4 is a State highway, appellee's approval of the plan recited that appellant would have to apply to the State Highway Administration for approval to make a cut in the median. Appellant subsequently requested permission from the State Highway Administration to construct the crossover at the intersection of Route 2–4 and proposed Monitor Way. The State Highway Administration, in a letter dated April 7, 1989, declined to approve the crossover.

Appellant entered into a Public Works Agreement dated October 19, 1989, providing for the construction of the two streets. Pursuant to the agreement, appellant was required to dedicate the land for both the streets,[1] perform the necessary engineering work, construct the streets, maintain them for a period of one year following construction, (July 1, 1991 is the operative date) and to indemnify appellee from all claims arising from the construction of the streets. The Public Works Agreement contained an expiration date of August 31, 1991. The streets were constructed and transferred by appellant to appellee by deed dated March 28, 1990 and recorded among the Land Records of Calvert County.

As mentioned, the State Highway Administration initially refused to allow the crossover but later agreed to reconsider and ordered a traffic study. The issue was described as "open" in a memo dated November 7, 1989, after the subdivision approval on June 23, 1989 and the execution of the Public Works Agreement on October 24, 1989. The State Highway Administration finally granted permission to construct the crossover in 1992, but a debate ensued as to who should pay for the crossover. In January of 1995, there was a written proposal to split the cost equally between the State, appellee, and appellant, with appellee fronting appellant's share to be reimbursed at a later time. Appellant did not sign this agreement and the cross-over has not been built; consequently, Monitor Way cannot be accessed by southbound traffic on Route 2–4, although the complaint alleged that "there are plans to construct the [crossover] in fiscal year 1995."

The crux of appellant's suit is that it was coerced into building and dedicating the streets, and that this coercion amounted to an unconstitutional taking. Appellant maintains that it was assured by appellee that the streets would be part

---

1. Appellee required that Monitor Way be deeded to it immediately but that Merrimac Way be deeded to it "on demand." Appellant argues that this was tantamount to a requirement that they both be deeded. Though the interpretation of this language causes the parties to disagree as to whether or not Merrimac Way was given freely to the county, it has no bearing on the limitations issue.

of "an integrated street system, including a crossover at the intersection of Monitor Way at Route 2–4," that appellee intended for appellant to rely on the assurances, and that appellee knew appellant was relying upon the assurances by building and transferring title to the streets. Appellant alleged that the cost of the streets imposed an extraordinary burden on its project, that its property became "economically worthless and valueless" without the crossover and the lack of a crossover denied it "all reasonable economic use of the land."

In response, appellee filed a motion to dismiss. After a hearing on December 1, 1994, in an opinion and order dated January 10, 1995, the trial court denied appellee's motion to dismiss. The trial court noted that appellee's motion raised various issues, "including the statute of limitations and [appellant's] failure to state a cause of action as to all counts." [2] The court noted that "for the purposes of this early motion, the allegations of the [appellant] must be presumed to be true" and found "both the date of the termination of the public works agreement (August 31, 1991), and the termination of the street maintenance agreement (July 1, 1991), to be within three years of the June 30, 1994 filing date and, therefore, . . . not an impediment to this filing."

The trial court further found that counts one, two, and three, characterized as "inverse condemnation" claims, stated a cause of action based on the allegation that there was no reasonable nexus between the taking of the streets and the subdivision requirements. The trial court characterized count four as an "action for possession . . . based primarily on illegal extraction of property making the deeds unenforceable." The trial court acknowledged difficulty with appellant's argument "related to promises by county agents concerning the cross-

---

2. In addition, the motion asserted that appellant's claims were not ripe, that it had no property interest to protect, that there was no proper allegation that it had been deprived of all economically viable use of the property, that a contract action could not be a basis for constitutional claims, that appellee could not be vicariously liable, that equitable estoppel was not applicable to a governmental entity, and that the facts were insufficient to invalidate a deed.

over" but concluded that "the allegations of illegal taking, assumed to be true at this stage, preclude dismissal of this count at this time."

On July 5, 1995, appellant filed a motion for summary judgment/ruling on point of law prior to trial, to which an answer was filed on July 21, 1995. A hearing was held on August 15, 1995, and, on that same date, the trial court entered an order granting the request for a ruling on point of law. In pertinent part, the order

FOUND, that Calvert County Zoning Regulation § 6–4.01A is in conflict with Md. Annotated Code Transportation Article § 8–625(c)(2), thereby rendering the Zoning Regulation § 6–4.01A invalid and it is further FOUND, that the determination of this invalidity is retroactive thereby rendering the [appellee] unable to rely on Calvert County Zoning Regulation § 6–4.01A during trial.

Appellee filed a notice of appeal from that ruling to this Court. The appeal was dismissed on August 29, 1995. In the meantime, on August 9, 1995, appellee filed a motion for summary judgment. Appellant filed an opposition to the motion, appellee filed a reply, and a hearing was held on August 28, 1995. On that date and prior to the hearing on the summary judgment motion, appellant filed a motion for summary judgment and a motion *in limine*, seeking a ruling that appellee was liable as a matter of law for the taking of appellant's property or, in the alternative, a ruling that the only issues to be tried were whether a legally sufficient nexus existed between appellee's actions and appellant's project and the amount of damages sustained. Additionally, appellant sought a ruling that appellee's experts would not be permitted to testify with respect to the issue of liability at trial. On September 1, 1995, appellee filed a motion to reconsider the trial court's ruling on appellant's motion for summary judgment/ruling on point of law prior to trial and, on September 11, 1995, appellee filed an opposition to appellant's motion for summary judgment and motion *in limine*. The trial court held a hearing on appellant's motion for summary judgment and motion *in limine* on September 14 but, prior to ruling on

that motion, issued an opinion and order dated September 26, 1995, granting appellee's motion for summary judgment. Subsequently, on September 28, 1995, a "line" was filed by the trial court, reciting that there was no need to consider plaintiff's motion for summary judgment and motion *in limine* or defendant's motion for reconsideration of its earlier ruling invalidating Calvert County Zoning Regulation § 6–4.01A, in light of the fact that summary judgment had been entered in favor of appellee.

In the opinion and order dated August 28, 1995, granting appellee's motion for summary judgment, the trial court summarized the facts, the issues, and the reasons for its conclusion. The court stated:

In the [appellee's] motion for summary judgment, they allege several things:

1. The Statute of Limitations bars Duke Street's claims.

2. The deed of the roads to the County is valid.

3. Plaintiff failed to exhaust administrative remedies.

4. Plaintiff has no takings claim because it deeded the property to the County.

5. Plaintiff has no standing.

6. Plaintiff has not demonstrated a violation of its substantive due process rights.

7. Plaintiff cannot demonstrate a violation of § 1983.

8. A demonstrable nexus exists between Plaintiff's property and the county requirements.

The Court will address the statute of limitations, exhaustion of administrative remedies, validity of the deed and substantive due process.

The trial court then held that the twenty-year period of limitations in Md.Code Ann., Courts & Judicial Proceedings art. (CJ), § 5–103 (1995 Repl.Vol.) was inapplicable and that appellant's claims were barred by the three year statute of limitations contained in CJ § 5–101.

In addressing the question as to when the causes of action accrued, the trial court found that appellant knew or should have known of its loss at the time of execution of the deed to appellee and, consequently, that the statute of limitations for counts one, two and three began to run "at the latest" on March 28, 1990. With respect to count four, the trial court found that appellant knew or should have known of the absence of consideration for the deed at the time of its execution, knew or should have known of its loss, and could have challenged the legality of appellee's actions at the time that it deeded the property to appellee. Thus, the trial court concluded that all claims were barred because they accrued no later than March 28, 1990, considerably more than three years before appellant's complaint was filed on June 30, 1994.[3]

## II.

### Discussion

Counts one through three contain inverse condemnation claims based on an allegation that appellee's actions constituted a "taking" for which appellant seeks "just compensation," a violation of the due process clause of the Fourteenth Amendment for which appellant seeks "damages," and a violation of the Maryland constitution.

Appellant's assertions are vague as to the identity of the property interest it believes was taken. The possibilities are that appellant is asserting a taking and damages for the street beds and that its allegation of diminution in value refers to the property underlying the street beds or, alternatively, that the taking and damages and the alleged diminution in value refer to the entire tract including the street beds.

The allegations in the complaint and the language in the motion papers appear to refer only to the street beds. At oral

---

3. The trial court also found that there was consideration for the deed in that appellant avoided maintenance costs assumed by appellee, that appellant failed to exhaust administrative remedies, and there was no violation of substantive due process as a matter of law.

argument, appellant's counsel stated that the property taken was the street beds, but that it included the cost of construction and the obligations under the Public Works Agreement.

Even if we assume an intent to claim a taking or damage to the entire property, there are no allegations or evidence of value of that property at any point in time or of the impact on value because of the failure to construct a crossover at any given point in time. There is nothing to show when the entire property became, if ever, economically nonviable. There are vague references that the crossover was not "timely" constructed, but there is no evidence of the impact on the entire property or when any such impact occurred. Consequently, we conclude that the subject of the alleged taking for Fifth Amendment purposes, and the subject of the alleged action amounting to a taking in violation of due process and in violation of the Maryland Constitution, is the street beds and the costs associated with them.

Appellant asserts that summary judgment is precluded because there are fact questions to be resolved in each of the following arguments: (1) the taking action did not accrue until the taking had been completed, which appellant argues is the expiration in August 1991, of the obligation to maintain and indemnify under the Public Works Agreement; (2) the actions did not accrue until an actionable injury occurred, which appellant argues is the time appellant became actually aware that the crossover would not be timely built; (3) the regulation relied upon by appellee to support its action was invalid, but appellant could not have known of its illegality until it was declared illegal, which was after the action was filed; and (4) with respect to count four, the action for possession of the property is governed by a twenty-year period of limitations.

## A.

### Constitutional Claims

We do not address whether a taking occurred as alleged in counts one, two, and three or whether the deed was invalid as

alleged in count four. We only address the question of when the causes of action accrued.

As we noted above, appellant's first three claims are fundamentally inverse condemnation claims. An inverse condemnation action is nothing more than a claim for damages, regardless of the theory or theories alleged. *Millison v. Wilzack,* 77 Md.App. 676, 684, 551 A.2d 899, *cert. denied,* 315 Md. 307, 554 A.2d 393 (1989). The three-year statute of limitations is applicable to inverse condemnation actions, even if based on constitutional grounds. CJ § 5–101. *See Electro–Nucleonics, Inc. v. W.S.S.C.,* 315 Md. 361, 370–71, 554 A.2d 804, *cert. denied,* 493 U.S. 854, 110 S.Ct. 158, 107 L.Ed.2d 115 (1989); *Millison v. Wilzack,* 77 Md.App. at 684, 551 A.2d 899. (The statute of limitations applicable to a federal civil rights action is the relevant state statute of limitations, which the Supreme Court has held is the one applicable to personal injury actions. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).)

The time of accrual of a § 1983 civil rights action, however, is a question of federal law. *McCoy v. San Francisco,* 14 F.3d 28 (9th Cir.1994). A claim will accrue when the affected party knew or should have known of the injury which is the basis of the action. *See National Advertising Company v. Raleigh,* 947 F.2d 1158 (4th Cir.1991), *cert. denied,* 504 U.S. 931, 112 S.Ct. 1997, 118 L.Ed.2d 593 (1992), *Bireline v. Seagondollar,* 567 F.2d 260 (4th Cir.1977), *cert. denied* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). The Maryland discovery rule applies with respect to State claims. The general Maryland law on accrual of a cause of action is stated in *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981); it accrues at the point in time when a claimant knew or should have known of circumstances that would cause a reasonable person to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the actionable wrong. We have analyzed both federal law and state law relevant to the accrual of appellant's causes of action,

and we come to the same conclusion in each instance: they accrued no later than when the property was conveyed.

Appellant argues that the Public Works Agreement amounted to a "continual taking," thereby extending the limitations period to three years after the obligation to maintain the streets and indemnify against claims under the Public Works Agreement terminated, on August 31, 1991. Appellant also argues that it should not have become aware of its injury or the effect of appellee's action until it "realized" the crossover was not going to be built in a timely manner.

 Continuing violations are recognized as extending the limitations period for civil rights claims, even those concerning an unconstitutional taking of real property. *See generally, Corvetti v. Lake Pleasant,* —— A.D.2d ——, 642 N.Y.S.2d 420 (1996). Claims that are in the nature of a "continuous tort," such as nuisance, can extend the period of limitations due to their new occurrences over time. *See Kennedy v. United States,* 643 F.Supp. 1072 (E.D.N.Y.1986); *Rapf v. Suffolk County of New York,* 755 F.2d 282 (2d Cir.1985).

Though it seems simplistic to state, a difference exists between cases in which the injury is a physical taking that remains without interruption and those that occur over time. Appellant alleges a "continual taking," as if once it gave title to appellant, there followed new and distinct unconstitutional takings. Appellant knew of the impact of appellee's actions no later than when it conveyed the property, and possibly earlier, when it knew the specifics of appellee's requests and knew or could have determined the related costs.

In *National Advertising Company, supra,* the Court held that the injury was suffered when the ordinance in question was adopted. The ordinance reduced the size of permissible signs, which made appellant's signs nonconforming. The ordinance provided a 5–1/2 year grace period for removal of nonconforming signs. Appellant argued that the cause of action did not accrue until the 5–1/2 year grace period expired or when removal was demanded. This view was rejected by

the Court, stating that the harm resulted from the initial application of the ordinance and the economic loss occurred then. It is significant to note that the ordinance did not provide for any exceptions to its application and, thus, its applicability was assured as of the time of enactment. The Court also pointed out that the injury could be calculated in terms of reduced present value when the ordinance was enacted. The *National Advertising* Court also dealt with a continuing violation argument and held that there was none because any harm to appellant stemmed from the initial application of the regulatory prohibition. *See Board of Supervisors v. Thompson Assoc.,* 240 Va. 133, 393 S.E.2d 201 (1990); *See generally Norco Constr., Inc. v. King County,* 801 F.2d 1143 (9th Cir.1986); *Carr v. Dewey Beach,* 730 F.Supp. 591 (D.Del.1990).

*Board of Supervisors v. Thompson Assoc., supra,* is quite similar, factually, to the case before us. The Supreme Court of Virginia held that the statute of limitations applicable to a developer's cause of action under § 1983 accrued on the date that the county and the developer entered an agreement, which included the developer's obligation to construct a service road as a prerequisite to approval of its site plan. The developer did not construct the road and, several years later, the state sued on a bond that the developer had been required to provide. The circuit court held that the developer's action was not barred because there was a continuing obligation. The Supreme Court of Virginia held that the § 1983 action accrued when the developer knew or had reason to know of the injury, which was when the requirement was imposed, not at a future date when it was or could have been invoked.

Appellant relies on *United States v. Dickinson,* 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), and *United States v. The Barge Shamrock,* 635 F.2d 1108 (4th Cir.1980), *cert. denied, Shell Oil Co. v. United States,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 107 (1981). In *Dickinson,* there was clearly a taking by the federal government when it built a dam and raised the level of a river, thereby flooding the property. The Court held that, when the government elected not to condemn

but to bring about a taking through a process of physical events, a party could wait and determine the level of flooding before seeking compensation for the taking. In *Barge Shamrock*, the Court was faced with an oil spill cost recovery action under the Federal Water Pollution Control Act, not an unconstitutional taking claim, and held that the cause of action accrued when the cleanup was completed, not when the spill occurred. *Dickinson*, which predates many recent cases on point, can readily be read to support the rule of law as it is enunciated in later cases. *See also Applegate v. United States*, 25 F.3d 1579 (Fed.Cir.1994). The *Barge Shamrock* holding is simply not applicable to a possessory taking of property. In the case before us, the allegation is that there was a possessory taking of a precisely defined tract of land conveyed by deed.

As Maryland authority for its continuing violation theory, appellant cites *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966), which we note is a medical malpractice, not an unconstitutional taking case. *Waldman* was decided before *Poffenberger v. Risser, supra,* wherein the Court of Appeals held that the discovery rule is generally applicable in determining when a cause of action accrues. The *Waldman* Court, applying the date of wrong test for accrual of limitations, stated, in a medical malpractice context, that a cause of action accrues at the end of continuing treatment unless the patient sooner knew or should have known of the injury or harm.

 In the case *sub judice,* appellant contends that it was coerced into deeding the streets to appellee. While there may have been *continuing ill effects* from the original alleged violation, there was not a series of acts or course of conduct by appellee that would delay the accrual of a cause of action to a later date. Unlike *Waldman*, appellant's rights were not dependent upon some future service to be rendered by appellee. Appellant was, therefore, on notice of acts by appellee constituting the alleged wrong no later than at the time it deeded the property.

Appellant seizes on the absence of a crossover as evidence that the impact could not be determined at the time of conveyance. First, appellant produced no evidence that it was promised a crossover by any entity, including the State Highway Administration, who, as appellant knew, was the entity with authority to authorize the crossover. The crossover was not referenced in either the Public Works Agreement or the deed to appellee.

■ Appellant points to the Master Plan of Prince Frederick as evidence that a crossover was promised by appellee. However, master plans serve as general guides that "recommend area development and proposed future land use and zoning." *Boyds Civic Assoc. v. Montgomery County Council,* 67 Md.App. 131, 506 A.2d 675 (1986), *aff'd in part, rev'd in part on other grounds,* 309 Md. 683, 526 A.2d 598 (1987). We have stated that "a master plan is at best a 'flexible guide,' or an 'intellectual prophecy' of future development." *Kanfer v. Montgomery County Council,* 35 Md.App. 715, 733, 373 A.2d 5 (1977). Advisory in nature, master plans are "continually subject to modification in light of actual land use development and serve as a guide rather than a straightjacket." *Boyds Civic Assoc.,* 67 Md.App. at 143, 506 A.2d 675. The Master Plan cannot serve as the basis for a promise or justifiable reliance and appellant knew, prior to construction of the roads, that the State had not approved the crossover.

The presence or absence of the crossover was not a basis for an actionable wrong. Nor can the mere existence of the zoning regulation that is involved in this case constitute a taking. Rather, based on appellant's assertions, the wrong was the action of appellee in requiring the construction of the streets and, thus, it was the application of the regulation, or appellee's exercise of its general police power, to the extent that it relied on either or both. Though the regulation provided for a possible exception, appellant never requested an exception, nor did appellant challenge the application of the regulation or appellee's requirement for construction of the

streets. Appellant arguably knew of the wrong as early as February, 1989, when the streets were required.

Appellant states that the Public Works Agreement and the maintenance obligation are the source of the taking, but argues that the taking did not occur until the obligations were completed. The effect of appellee's action could have been valued as early as February 1989, *i.e.,* the value of the street beds and the related costs could have been determined. It is not necessary for the precise extent of the loss to be known for the cause of action to accrue. In this case, appellant gambled that the "illegal" requirement would pay off and enable appellant to recoup the loss incurred, presumably calculating that the crossover would be approved and constructed, thereby increasing the value of its property. The loss (the street beds and related costs), while arguably incurred in February 1989 or at the time of construction, was in fact incurred no later than when the property was conveyed.

■ In summary, we conclude that, whether we are addressing a taking under the Fifth Amendment or a violation of due process under the Fourteenth Amendment, a cause of action accrues when the affected party knew or should have known of the unlawful action and its probable effect. *Millison,* 77 Md.App. at 685–86, 551 A.2d 899. This does not mean that the party need know all relevant facts, including the precise nature and amount of the economic impact.

The fluctuation in value of property is a normal incident of ownership. With respect to the entire tract, appellant had an economic expectation that it would increase in value after construction of the crossover. Assuming without deciding that such an expectation interest legally could be the subject of a taking, there was no evidence that appellee interfered with that expectation; and, as mentioned previously, there was no evidence presented to assess impact or economic viability.

## B.

### *Claim for Possession*

Appellant characterizes count four as an action for possession under Md.Code Ann., Real Prop. art., § 14–108.1 (1996

Repl.Vol.), governed by the twenty year period of limitations contained in CJ, § 5–103. We decline to see it as such. As support for its position that it has a claim for possession, appellant quotes from *Electro–Nucleonics, Inc. v. W.S.S.C.,* 315 Md. at 373–74, 554 A.2d 804, as follows:

> The owner whose property has been taken, but whose action for inverse condemnation is barred by limitations, may, depending on the facts, lose only the option of compelling the public authority to acquire the property upon payment of just compensation. Even if an inverse condemnation action is barred by limitations, the owner who claims that a taking has been effected may, depending upon the facts, bring an action of ejectment, *[Dept. of Natural Resources v.] Welsh,* 308 Md. [54] at 65–66, 521 A.2d [313] at 318–19 [ (1986) ], *Dunne v. State,* 162 Md. 274, 291, 159 A. 751, 758, *cert. denied,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932); or a bill to quiet title, *Welsh,* 308 Md. at 65, 521 A.2d at 318; or "the State's agencies could be restrained from appropriating the property unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid or tendered," *Dunne,* 162 Md. at 291, 159 A. at 758; quoted in *Welsh,* 308 Md. at 65, 521 A.2d at 318.

To aid our understanding, we refer to the paragraph immediately preceding the one quoted by appellant, which provides:

> Our holding that CJ Sec. 5–101's three year period of limitations applies to inverse condemnation actions does not alter this implication in *[Department of Natural Resources v.] Welsh,* [308 Md. 54, 521 A.2d 313 (1986) ] or mean that an entity enjoying the power of eminent domain can acquire title to property by an uncompensated taking of three or more years duration. The three year statute of limitations simply bars the purported condemnee's remedy by way of an action predicated on the inverse condemnation theory. If there has been a taking, the right to compensation continues unless and until it is extinguished. If the facts of the taking amount to adverse possession, the condemnor will not acquire title and extinguish the right to compensation until twenty years have passed. *See* CJ Sec. 5–103(a);

*Ivy Hill Ass'n v. Kluckhuhn,* 298 Md. 695, 472 A.2d 77 (1984) (private parties).

The Court of Appeals, in *Electro–Nucleonics,* clearly states that actions for ejectment and to quiet title are subject to the twenty year limitations period only under factual circumstances similar to those in *Department of Natural Resources v. Welsh,* 308 Md. 54, 521 A.2d 313 (1986), *Dunne v. State,* 162 Md. 274, 291, 159 A. 751, 758, *cert. denied,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932) and, more important, *Weyler v. Gibson,* 110 Md. 636, 73 A. 261 (1909), the precedent relied upon by the later decisions.

*Weyler v. Gibson* concerned an ejectment proceeding against the Maryland Penitentiary. In that case, the plaintiffs were the heirs of the owner of the street beds, to which the owner had granted a valid easement to the City of Baltimore. After some time, the Penitentiary condemned some of the surrounding housing lots to be used for the Penitentiary's expansion. The Penitentiary, "without authority of law, simply took possession of the street and erected a part of the buildings of the Maryland Penitentiary across it." *Id.* at 648, 73 A. 261. The plaintiff still retained title to the land, and therefore was capable of bringing an ejectment action.

In *Dunne v. State,* 162 Md. 274, 159 A. 751 (1932), the State Roads Commission, in widening a road, encroached upon a significant portion of the plaintiff's front yard without proper notice and without compensation. In dicta, the court noted that during oral arguments the State "claimed title to the land by an agreement with a former owner." If true, the court noted, "it may, under requisite circumstances, present a question of title that can be determined by an action of ejectment against those individuals who unlawfully took and retained possession of the property. [citing *Weyler* ]." In *Department of Natural Resources v. Welsh,* 308 Md. 54, 521 A.2d 313 (1986), the plaintiff filed a bill to quiet title against the Department of Natural Resources. Plaintiff inherited a tract of land properly recorded in the Allegany County land records. The property had formerly been a part of a much larger tract before plaintiff's property was sold in 1875. The

State condemned the larger tract in 1966, which eventually became a part of Rocky Gap State Park. Through a recording error in 1878, plaintiff's property was still encompassed in the description of the larger parcel, and this was not discovered by title search at the time of the condemnation. Plaintiff, therefore, still retained legal title to the property at the time it was discovered that the State also claimed the property as well.

In *Electro–Nucleonics, Inc.*, the Court of Appeals stated that, in the circumstances delineated by the line of cases defined by *Weyler, Dunne,* and *Welsh,* a party may bring an action for possession even though the normal limitations period of three years has expired. The clear intention is that in the factual instances in which a plaintiff has retained legal title to the property, but the state has taken the property without properly instituting condemnation proceedings, a party may have an action based in possession. An action for possession requires a claim of title and a right to possession. On the facts of this case, this necessarily means the deed would have to be invalidated and, consequently, count four must necessarily seek rescission. Lack of consideration is alleged, and, whether or not legally sufficient, the facts were known at the time the property was deeded, if not before. The action for rescission is governed by the three-year period of limitations, and it is barred.

## C.

### *Invalidity of the County Zoning Regulation*

On August 15, 1995, the trial court entered an order invalidating Calvert County Zoning Regulation § 6–4.01A on the ground that it conflicted with and was preempted by Md.Code Ann., Transportation art., § 8–625(c)(2) (1993 Repl.Vol.).[4]

---

4. The Calvert County regulation states:

> Where property abuts a minor arterial and a secondary or collector road, access to the property shall be by way of the secondary or collector road. Exceptions to this rule shall be instances where the

■ We note that, in a footnote to its final order granting the summary judgment, the trial court explained that its earlier ruling that Calvert County Zoning Regulation § 6-4.01A was invalid was a "narrow ruling that goes only to the County's power to deny access, not to any powers the County may have regarding the dedication of land for use as public roads." Despite this limitation and despite the fact that the order does not constitute precedent under the doctrine of *stare decisis,* we vacate it to avoid any possibility of reliance on a finding of preemption that was unnecessary, decided on an evidentiary basis, and without any input from the State.

## III.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed, and the order invalidating Calvert County Zoning Regulation § 6-4.01A, based on a conflict with Md.Code Ann., Transportation art., § 8-625(c)(2), is vacated.

JUDGMENT AFFIRMED; ORDER OF THE COURT INVALIDATING CALVERT COUNTY ZONING REGULATION § 6-4.01A VACATED; COSTS TO BE PAID BY APPELLANT.

---

Planning Commission determines that direct access onto the minor arterial would promote traffic safety.
Calvert County Zoning Regulation § 6-4.01A.
 The Md. Transportation article states:
 If the [State Highway] Administration finds it expedient for traffic safety, the Administration may limit the width and location of access points by any method that it considers desirable. However, the Administration may not deny an abutting property owner all access along any State highway other than a parkway or freeway.
Md.Code Ann., Transportation art., § 8-625(c)(2).
 The parties implicitly treat Route 2-4 as a State highway and "minor arterial" and Duke Street as a "secondary road."