SHEDD, Circuit Judge:
Clayland Farm Enterprises, LLC appeals the district court’s order dismissing its claims against Talbot County, Maryland, and other defendants for lack of ripeness: Because Clayland Farm’s claims are ripe, we reverse.
I.
Clayland Farm is a 106 acre property located in Talbot County, Maryland. At all relevant times, Clayland Farm has been zoned as a “Village Center,” which is generally the “preferred location” in rural areas for “single and multi-family residential development.” J.A. 15-16.[1]
The owners of Clayland Farm cannot pursue their land use goals, however, because of three Talbot County ordinances, two that are moratoriums on development, and one that limits sewer availability. Bill Nos. 1214 and 1257, enacted in 2012 and 2014, have indefinitely prohibited certain types of development in areas zoned as Village Centers, including Clayland Farm. The moratoriums prohibit owners from seeking or obtaining approval to subdivide their property. They also impose more restrictive zoning density rules by prohibiting subdivision of properties zoned as “Village Centers” into more than two lots. The affected property owners, including Clay-land Farm, have no ability to seek a variance from, or a waiver to, the moratoriums and are otherwise unable to challenge them outside of court.
*243 The third challenged ordinance established a classification method that determines the availability, if any, and type of sewer system for a property. The Talbot County Council adopted Bill No. 1229 in 2012, pursuant to the Maryland Sustainable Growth and Agricultural Preservation Act of 2012 that required each county to map existing property and designate it in one of seven “tiers.” A property’s tier designation determines the property’s allowed type of subdivision and allowed wastewater treatment system. J.A. 26. Talbot County placed all but six acres of Clayland Farm in Tier IV, which is property intended for natural resources protection and without sewer access. The County took this action even though Clayland Farm had sewer access prior to this new designation and despite the advice of the Maryland Department of Planning,[2] which informed Talbot County in a private letter that Clayland Farm had been improperly designated as a Tier IV area. Talbot County did not take any action in response to the department’s advice.[3]
In response to these ordinances, Clay-land Farm filed suit in state court against Talbot County, various county officials, and the Maryland Department of Planning. Clayland Farm’s complaint asserted seven claims, arising under state and federal law. Counts I—III assert federal claims against Talbot County for violations of Clayland Farm’s Fifth and Fourteenth Amendment rights under the United States Constitution, pursuant to 42 U.S.C. § 1983. Count I asserts a regulatory takings claim that the moratorium is facially unconstitutional. Count II alleges that Talbot County deprived Clayland Farm of their procedural due process rights by enacting the moratoriums with no postdepri-vation remedies, and Count III alleges that Talbot County deprived Clayland Farm of its substantive due process rights by enacting the ordinances.
Count IV asserts a § 1983 conspiracy claim against Talbot County and its officials for violating Clayland Farm’s Fifth and Fourteenth Amendment rights. Counts V and VI assert state declaratory judgment claims against various defendants, and Count VII seeks injunctive relief against various defendants to enjoin the violations alleged in the other counts.
Talbot County removed the case and then moved to dismiss. The district court granted the motion “on the ground that the issues raised by [Clayland Farm] are not yet ripe for adjudication. It is beyond the province and competence of this court to make zoning decisions.... The record does not suggest that the Talbot County Council has yet denied any of [Clayland Farm’s] constitutional rights.” J.A. 72. Clayland Farm timely appealed.
II.
We review de novo the district court’s grant of a motion to dismiss, Lebron v. Rumsfeld, 670 F.3d 540, 547 (4th Cir. 2012), accepting the facts as alleged in Clayland Farm’s complaint. See Aziz, 658 F.3d at 390. For the following reasons, we reverse the district court’s dismissal of Clayland Farm’s complaint because all of these claims are ripe.
’ Ripeness is a justiciability doctrine intended to prevent the courts from entan *244 gling themselves in premature disputes. gee, e.g., National Park Hospitality Ass’n v. Department of Interior, 538 U.S. 803, 807-08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). “The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.” Id, (internal quotations and citations omitted). A claim should be dismissed for lack of ripeness if the plaintiff has not yet suffered injury and any future impact “remains wholly speculative.” Gasner v. Bd. of Supervisors, 103 F.3d 351, 361 (4th Cir. 1996). In determining ripeness, “[a] case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties.” Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (internal citation omitted). We now address Clayland Farm’s claims under this standard.
Count I is a facial challenge to the moratoriums and is thus clearly ripe. See Complaint at 27, J.A. 34 (“Talbot County has deprived and continues to deprive [Clayland Farm] of its Fourteenth Amendment rights by enacting and perpetuating the Village Growth Moratorium, an illegal, illegitimate and inequitable regulatory taking.”) (emphasis added); see also Appellant’s Br. at 22-28.[4] When an ordinance on its face is alleged to have effected a taking, as in Count I, the claim accrues when the ordinance interferes in a clear, concrete fashion with the property’s primary use. National Advertising Co. v. City of Raleigh, 947 F.2d 1158, 1163 (4th Cir. 1991). Facial takings challenges to a regulation are “generally ripe the moment the challenged regulation or ordinance is passed.... ” Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736, n. 10, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997).[5]
Clayland Farm suffered concrete and certain injury as soon as the moratoriums were enacted; the ordinances prohibit Clayland Farm from subdividing more than one additional lot from its property and from developing more than one dwelling unit on the lot, which had previously been allowed. The possibility that Talbot County may enact future zoning or planning ordinances that affect Clayland Farm’s ability to develop its property does not call into question the finality of the three ordinances that currently restrict Clayland Farm. Thus, Count I’s facial challenge is ripe.[6]
*245 For Count II, Clayland Farm asserts a procedural due process claim, asserting that the enactment of an indefinite moratorium without any post-deprivation remedies facially “violates the Fourteenth Amendment of the U.S. Constitution.” J.A. 37. Because Clayland Farm claims a concrete injury and has been provided no means to address that injury, Count II is ripe. See Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful maimer); see also Doe v. Virginia Dep’t of State Police, 713 F.3d 746, 758-69 (4th Cir. 2013). Count III asserts that the moratorium and the designation of the Clayland Farm property as Tier IV property were so arbitrary that they facially violate the Constitutional guarantee of substantive due process. See, e.g., Beacon Hill Farm Assoc. v. Loudoun County Bd. of Sup’rs, 875 F.2d 1081, 1084-85 (4th Cir. 1989) (substantive due process requires that regulation cannot be clearly arbitrary and without substantial relationship to general welfare). Count III is therefore ripe.
Count IV, which alleges a conspiracy to commit the constitutional violations in Counts I—III, is ripe for the same reason the events supporting those counts are ripe. While it may not be necessary that the object of the alleged conspiracy has been achieved for the claim to be ripe, the claim certainly is ripe when the object of such conspiracy, here, the enactment of the ordinances, has been accomplished.
Finally, Counts V, VI, and VII are ripe because they allege state law violations or seek injunctive relief based on the enactment of the three ordinances. While the district court found the claims were not ripe because Talbot County had “not yet reached any final decision,” J.A. 72, Clayland Farm suffered concrete injury when the three ordinances were enacted, even if the ordinances may later be modified.
III.
We therefore reverse the district court’s dismissal of Clayland Farm’s claims for lack of ripeness and remand for further proceedings.
REVERSED

. Because we are reviewing a motion to dismiss, we describe the facts as alleged in Clay-land Farm's complaint. See Aziz v. Alcolac, Inc., 658 F.3d 388, 390 (4th Cir. 2011).

. The Maryland Department of Planning is a state agency that serves as "an advisory, consultative, and coordinating agency” on a variety of issues related to land use and planning. See Md. Code Ann., State Fin. & Proc. § § 5-201, 5-302.

. Had the Maryland Department of Planning sent a formal, rather than informal, letter, Talbot County would have been required to hold a public hearing on this issue.

. Clayland Farm also made this point clear at oral argument. Oral Argument at 3:45, Clayland Farm Enterprises, LLC v. Talbot County, Maryland et al. (No. 15-1755), available at http://www.ca4.uscourts.gov/oral-argumenl7 listen-to-oral-arguments ("These are facial challenges.”).

. Speaking to Count I, Talbot County admitted that "[t]o the extent it’s a facial challenge, the district court would have jurisdiction to address it because it's ripe.” Oral Argument at 20:52, Clayland Farm Enterprises, LLC v. Talbot County, Maryland et al. ( No. 15-1755), available at http://www.ca4.uscourts.gov/oral-argumenl/listen-to-oral-arguments (emphasis added).

. Talbot County argues that Clayland Farm’s just compensation claim is not ripe because Clayland Farm did not pursue the state remedy of inverse condemnation. However, the state-litigation requirement for takings claims “does not apply to facial challenges to the validity of a state regulation.” See Holliday Amusement Co. v. South Carolina, 493 F.3d 404, 407 (4th Cir. 2007). As to any as-applied just compensation claim for an otherwise valid regulatory taking, Clayland Farm has satisfied the state-litigation requirement by filing this action in state court; Maryland does not have a separate statutory or administrative inverse condemnation remedy to challenge an alleged regulatory taking of property. See, e.g., Duke Street Ltd. P’ship v. Board of Cnty. Comm'rs of Calvert Cnty., 112 Md.App. 37, 684 A.2d 40, 49 (1996). Thus, any claimed noncompliance with the state-litigation requirement would be excused because it was the County’s removal of the case that prevented the state court from addressing Clayland *245 Farm’s ‘inverse condemnation’ type claim contained in this case. See Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013).