*Harford County, Maryland v. Maryland Reclamation Associates, Inc.*, No. 0788, Sept. Term 2018. Opinion filed on August 1, 2019, by Berger, J.

INVERSE CONDEMNATION - REGULATORY TAKING - EXHAUST ADMINISTRATIVE REMEDIES

Before bringing a regulatory takings claim against the government, a landowner must exhaust her administrative remedies. The landowner adequately exhausts her administrative remedies when she challenges the regulation in an administrative proceeding and, if that fails, requests variances to circumvent the challenged regulation. In addition, the landowner must appeal the unfavorable administrative rulings to an administrative review board before bringing an action in the circuit court.

INVERSE CONDEMNATION - STATUTE OF LIMITATIONS - FINALITY

An inverse condemnation claim against a government entity accrues when the government entity -- or some administrative review board -- renders a final administrative decision that amounts to a taking of property. Although a landowner may appeal the government's final decision to the courts, such an appeal does not delay the accrual date of an inverse condemnation claim.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 788

September Term, 2018

_____

HARFORD COUNTY, MARYLAND

v.

MARYLAND RECLAMATION
ASSOCIATES, INC.

_____

Berger,
Nazarian,
Wells,

JJ.

_____

Opinion by Berger, J.

_____

Filed:  August 1, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The origin of this dispute dates back to 1990, when Maryland Reclamation Associates, Inc. ("MRA" or "Maryland Reclamation"), appellee, purchased sixty-two acres of land for the purpose of constructing and operating a rubble landfill.[1]  After MRA acquired the land, Harford County (the "County"), appellant, modified its zoning laws to disallow landowners -- MRA included -- from operating rubble landfills.  For nearly three decades, MRA has fought the County's regulatory efforts in various administrative and judicial forums.  The dispute now reaches the Maryland appellate courts for the fifth time.[2]

In this appeal, the County appeals from a verdict rendered by a jury in the Circuit Court for Harford County, in which MRA prevailed on its inverse condemnation claim and was awarded $45,420,076, representing just compensation in the amount of $30,845,553 plus $14,574,523 in interest.  For the reasons explained herein, we reverse the judgment entered below, and remand the case for further proceedings consistent with this opinion.

After the County enacted zoning regulations that prohibited MRA from operating a rubble landfill, MRA sought several variances.  If approved, the variances would have permitted MRA to proceed with its project.  The Harford County Hearing Examiner denied MRA's requests, and in 2007, the Harford County Board of Appeals (the "Board of

---

[1] A rubble landfill is a sanitary landfill that accepts only trees, land clearing, construction, and demolition debris.  *See* Md. Code (1989, 2014 Repl. Vol.), § 9-210(c)(2) of the Environmental Article.

[2] *See Holmes v. Md. Reclamation Assocs., Inc.*, 90 Md. App. 120 (1992), *cert. dismissed sub nom. Cty. Council of Harford Cty. v. Md. Reclamation Assocs., Inc.*, 328 Md. 229 (1992) (*MRA I*); *Md. Reclamation Assocs., Inc. v. Harford Cty.*, 342 Md. 476 (1996) (*MRA II*); *Md. Reclamation Assocs., Inc. v. Harford Cty.*, 382 Md. 348 (2004) (*MRA III*); *Md. Reclamation Assocs., Inc. v. Harford Cty.*, 414 Md. 1 (2010) (*MRA IV*).

Appeals" or the "Board") affirmed the Hearing Examiner's decision by a unanimous vote. In *MRA IV*, 414 Md. 1 (2010), the most recent case between the parties, the Court of Appeals held, among other things, that the County was not estopped from amending its zoning laws, and that the County did not err in denying MRA's requests for variances.

On February 19, 2013, following *MRA IV*, MRA filed suit in the Circuit Court for Harford County, alleging that the County's actions constituted a regulatory taking in violation of the Maryland Constitution and the Maryland Declaration of Rights.[3] Thereafter, the County filed a motion to dismiss and a motion for summary judgment, arguing that MRA's inverse condemnation claim was barred by the statute of limitations. The County averred that MRA's claim accrued in June 2007, when the Board of Appeals voted 7-0 to deny MRA's requests for variances. The circuit court disagreed. In a memorandum opinion, Judge William O. Carr denied the County's motions, ruling that MRA's claim was timely because the claim accrued in 2010, when the Court of Appeals issued its opinion in *MRA IV*.

The case was then tried before a jury in April 2018. The jury ultimately found in favor of MRA on its takings claim and awarded damages in the amount of $45,420,076. This timely appeal followed.[4]

---

[3] MRA further pursued a *per se* takings claim pursuant to *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). That claim did not proceed to trial. The circuit court granted the County's motion for summary judgment, ruling that MRA could not succeed because the land still had a resale value. MRA filed a cross-appeal contending that the circuit court erred in granting the County's motion.

[4] In addition, Montgomery County filed an *amicus curiae* brief, urging us to reverse the judgment. Several other counties and municipalities signed the brief, including Cecil

On appeal, the County poses six questions, which we set forth *verbatim.*

1. Should MRA's takings claim be dismissed based on MRA's failure to raise this constitutional issue in any administrative proceeding?

2. Is MRA's takings claim barred by the statute of limitations when it was filed more than three years after the final administrative agency decision denying MRA's variance requests?

3. Is MRA's takings claim barred by the final judgment in *MRA IV* under the doctrines of res judicata and collateral estoppel?

4. Did the Board's denial of MRA's variance requests to construct and operate a landfill constitute an unconstitutional taking when MRA has no vested property right or interest with respect to such a use?

5. Did the Board's denial of variances to prevent public harm constitute a taking for which compensation is due?

6. Should the jury's award of more than $45 million in damages be reversed when MRA failed to present any evidence of the Property's fair market value?

In its cross-appeal, MRA presents an additional question, which we set forth *verbatim.*

Did the Circuit Court err when it granted summary judgment on MRA's *per se* takings claim under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)?

County, Prince George's County, Howard County, Carroll County, the City of Gaithersburg, the Mayor and Council of Rockville, the Mayor and Common Council of Westminster, the Maryland Municipal League, and the Maryland Association of Counties.

3

We hold -- as a matter of law -- that MRA's inverse condemnation claim accrued in 2007, when the Board of Appeals denied MRA's requests for variances. As a result, MRA's claim is time-barred. We, therefore, reverse the judgment entered by the circuit court and remand the case for the entry of judgment in favor of the County.

## BACKGROUND

This dispute concerns a sixty-two-acre plot of land in Harford County, Maryland. We draw from the Court of Appeals' comprehensive opinions in *MRA II*, *supra*, 342 Md. 476 (1996), and *MRA IV*, *supra*, 414 Md. 1 (2010), to summarize the history of the various administrative proceedings and earlier appeals.

> In August 1989, the plaintiff-appellant, Maryland Reclamation Associates, Inc., contracted to purchase property located adjacent to Gravel Hill Road in Harford County, Maryland. Maryland Reclamation intended to construct and operate a rubble landfill on this property; thus, it began the process of obtaining a rubble landfill permit from the Maryland Department of the Environment pursuant to Maryland Code (1982, 1996 Repl. Vol), §§ 9-204 through 9-210, §§ 9-501 through 9-521 of the Environment Article, and COMAR 26.03 through 26.04.

> Maryland Reclamation first requested that Harford County include the Gravel Hill Road property in Harford County's Solid Waste Management Plan as a rubble landfill. Thereafter, Harford County amended its Solid Waste Management Plan to include Maryland Reclamation's Gravel Hill Road site as a rubble landfill. The property's inclusion in the Harford County Solid Waste Management Plan, however, was made subject to twenty-seven conditions, including a minimum landscape buffer of 200 feet. On November 16, 1989, Harford County advised the Maryland Department of the Environment that Maryland Reclamation's Gravel Hill Road property had been included in the County's Solid Waste Management Plan as a rubble landfill site.

4

Maryland Reclamation next sought approval at the state government level from the Department of the Environment. On November 20, 1989, Maryland Reclamation received Phase I permit approval from the Department of the Environment. Maryland Reclamation then filed with the Department the necessary reports and studies for Phase II and Phase III approvals.

[M]aryland Reclamation had entered into a contract to purchase the property located adjacent to Gravel Hill Road in August 1989, before its inclusion in Harford County's Solid Waste Management Plan. Allegedly relying on the property's inclusion in Harford County's Solid Waste Management Plan and on the Department of the Environment's Phase I approval, Maryland Reclamation consummated the purchase of the Gravel Hill Road property on February 9, 1990, for $732,500. The settlement occurred on the last possible day under the terms of the contract of sale.

Four days after the settlement date, newly appointed Harford County Council President Jeffrey D. Wilson and Council Member Joanne Parrott introduced in the County Council Resolution 4-90, which provided for the removal of Maryland Reclamation's property from the County's Solid Waste Management Plan. [Footnote omitted.] In the litigation that ensued over this resolution, the Court of Special Appeals held that Resolution 4-90 was invalid because it was preempted by the State's authority over solid waste management plans and the issuance of rubble landfill permits. [*MRA I*], 90 Md. App. 120, 600 A.2d 864, *cert. dismissed sub nom. County Council v. Md. Reclamation*, 328 Md. 229, 614 A.2d 78 (1992). [Footnote omitted.]

While the litigation over Resolution 4-90 was pending, Bill 91-10 was introduced in the Harford County Council, on February 12, 1991, as an emergency bill. Bill 91-10 proposed to amend the requirements for a rubble landfill by increasing the minimum acreage requirements, buffer requirements, and height requirements. The bill, inter alia, would establish a minimum rubble fill size of 100 acres and a buffer zone of 1000 feet. After public hearings, the County Council passed the bill on March 19, 1991, and the County Executive signed the bill into law on March 27, 1991. [Footnote omitted.]

On April 2, 1991, Bill 91-16 was introduced in the Harford County Council. This bill would authorize the County Council to remove a specific site from the County's Solid Waste Management Plan if the site does not comply with certain zoning ordinances, if a permit has not been issued by the State Department of the Environment within eighteen months of the site being placed in the County's Solid Waste Management Plan, or if the owner of the site has not placed the site in operation within the same eighteen month period. Bill 91-16 was passed by the County Council, signed into law by the County Executive on June 10, 1991, and is codified as § 109-8.4 of the Harford County Code. [Footnote omitted.]

The President of the Harford County Council, on April 25, 1991, sent a letter to the State Department of the Environment, enclosing a copy of enacted Bill 91-10, and advising the Department that the provisions of the bill could call into question the status of sites which were in the process of obtaining rubble landfill permits. On May 2, 1991, the Department of the Environment advised the County Council that if a permit were to be issued to Maryland Reclamation, such issuance would not authorize Maryland Reclamation to violate any local zoning or land-use requirements.

Also on May 2, 1991, the County's Director of Planning sent a letter to Maryland Reclamation informing it of Bill 91-10, indicating that Maryland Reclamation's property would apparently fail to meet the requirements of Bill 91-10, stating that Maryland Reclamation should submit documentation showing that the Gravel Hill Road site could meet the requirements of the zoning ordinances, and stating that, if the site could not meet such requirements, Maryland Reclamation would need a variance to operate a rubble landfill on the property. Maryland Reclamation did not submit any documents pursuant to the May 2, 1991, letter and did not file an application for a variance. [Footnote omitted.] Maryland Reclamation did file on May 21, 1991, an "appeal" to the Harford County Board of Appeals from the "administrative decision pursuant to Section 267-7 E in a letter dated 5/2/91," requesting that the Board "review and reverse the decision of the Zoning Administrator interpreting that the standards of Council Bill 91-10 apply to the Applicant." The "application" to the Board of Appeals asserted that Bill 91-10 was

6

inapplicable to the property and that, if it was applicable, it was invalid. [Footnote omitted.]

On May 14, 1991, Resolution 15-91 was introduced in the Harford County Council. This resolution purported to interpret Harford County law and determine that the Gravel Hill Road site was not in compliance with county law; the resolution went on to remove the site from the County's Solid Waste Management Plan. The County Council passed Resolution 15-91 on June 11, 1991. The resolution was apparently not submitted to the County Executive for his approval.

Maryland Reclamation on June 20, 1991, filed a complaint in the Circuit Court for Harford County, seeking a Declaratory Judgment and Injunctive Relief against Harford County and the Harford "County Council." Maryland Reclamation requested, inter alia, the following: (1) a declaration that Bills 91-10 and 91-16, as well as Resolution 15-91, are "null and void as to the Gravel Hill Site;" (2) an injunction preventing the County from enforcing Bills 91-10 and 91-16 and Resolution 15-91 against Maryland Reclamation; and (3) an injunction staying all further action on Maryland Reclamation's "appeal" to the Board of Appeals. Maryland Reclamation advanced numerous legal theories to support its complaint for declaratory and injunctive relief.

The circuit court on June 28, 1991, issued an interlocutory injunction preventing enforcement of Bills 91-10, 91-16, and Resolution 15-91 against Maryland Reclamation. The order expressly allowed the Department of the Environment to continue its processing of Maryland Reclamation's pending permit application. The order also stayed the processing of Maryland Reclamation's administrative "appeal" from the Director of Planning's "decision" contained in the Director's May 2, 1991, letter. Finally, the interlocutory order prohibited Maryland Reclamation from starting any construction without court approval.

On February 28, 1992, the State Department of the Environment issued to Maryland Reclamation a permit to operate a rubble landfill on its property. The Department

7

expressly conditioned the permit upon Maryland Reclamation's compliance with all local land-use requirements. [Footnote omitted.]

Upon cross-motions for summary judgment, the circuit court on May 19, 1994, filed an opinion and judgment, declaring that Harford County was entitled to enact new zoning laws that may prevent Maryland Reclamation from operating a rubble landfill, and that Bills 91-10 and 91-16 were not invalid on the grounds asserted by the plaintiff. The court, however, declared that Resolution 15-91 was invalid on its face. According to the circuit court, the Harford County Council was acting as a legislative body when it passed the resolution, and the passage of the resolution constituted an illegal attempt to interpret and apply the laws which the Council had previously enacted.

Maryland Reclamation appealed to the Court of Special Appeals with respect to the circuit court's declaration that Bills 91-10 and 91-16 were not invalid. The County did not cross-appeal from the circuit court's declaration that Resolution 15-91 was invalid. Before any further proceedings in the intermediate appellate court, this Court issued a writ of certiorari.

*MRA II*, *supra*, 342 Md. at 480-86. Ultimately, the Court of Appeals held in *MRA II* that "MRA had not exhausted its administrative remedies, including appealing the Zoning Administrator's ruling to the Board of Appeals, and applying to the Zoning Administrator for variances." *MRA IV*, *supra*, 414 Md. at 12 (citing *MRA II*, *supra*, 342 Md. at 496-97).

Thereafter MRA filed requests for interpretation with the Zoning Administrator, presenting nine issues. After receiving unfavorable rulings, MRA appealed to the Board of Appeals. The Board, through its Zoning Hearing Examiner, conducted a hearing and issued a decision dated April 2, 2002 that the application of Bill 91-10 to the proposed rubble landfill did not violate federal, state, or local laws. As summarized by Judge Harrell in *MRA III*, the Hearing Examiner's findings and conclusions underlying this decision were as follows:

8

1. Bill 91-10 applies to MRA's property on Gravel Hill Road.

2. The requirements of Bill 91-10 can be validly applied to MRA's property on Gravel Hill road under the circumstances of this case and in light of the Environmental Article of the Maryland Code as well as other principles of Maryland law.

3. MRA's operation of a rubble landfill on its property at Gravel Hill Road pursuant to its state permit will violate applicable Harford County Zoning law, particularly Harford County Code §§ 267-40.1, 267-28C, 267-28D(4) and 267-41. Moreover, the Hearing Examiner questions whether the permit issued to MRA by MDE is validly issued as it was based on misinformation provided to the State by MRA regarding the conformance of the property and use with Harford County Zoning law.

4. MRA cannot obtain a grading permit unless it can meet the requirements of Harford County Zoning law. To the extent MRA does not meet specific standards it must seek a variance and obtain a variance from provisions with which it cannot comply. MRA's reliance on site plan approvals that pre-date the enactment of Bill 91-10 is without merit.

5. MRA's operation of a rubble landfill on its property at Gravel Hill Road pursuant to its State-issued Refuse Disposal Permit No. 91-12-35-10-D and as renewed by Refuse Disposal Permit 1996-WRF-0517 will violate applicable Harford County zoning law.

9

6. Harford County is not prohibited by the principles of estoppel from applying the provisions of Harford County Bill 91-10 (section 267-40.1 of the Harford County Code) to MRA's property and specifically, to MRA's operation of a rubble landfill on its property.

7. MRA's rubble landfill did not acquire vested rights in its use that would insulate it from the application of Bill 91-10 to that use. It is the vested rights doctrine itself that allows a landowner to rais[e] issues of constitutional protections. There is no constitutional infringement on the rights of MRA because a vested right was not established. Applying the provisions of Bill 91-10 to MRA's Gravel Hill Road property is, therefore, not prohibited by the United State[s'] Constitution and/or the Maryland Declaration of Rights.

8. Harford County is not preempted by the Environmental Article of the Maryland Code, particularly sections 9-201 et seq. and 9-501 et seq., from applying Bill 91-10 to MRA's Gravel Hill Road property.

9. MRA's operation of a rubble landfill on its Gravel Hill Road property is not a valid non-conforming use pursuant to Harford County Zoning Code.

*MRA III*, 382 Md. at 359-60, 855 A.2d at 357-58. After the issuance of the Hearing Examiner's decision, the following transpired:

On 11 June 2002, the County Council, sitting as the Board of Appeals, adopted the Zoning Hearing Examiner's decision. Harford County, therefore, refused to issue to MRA a grading permit or zoning certificate for the

10

proposed rubble landfill because of the strictures of Bill 91-10. Neither in response to the Board of Appeals's final decision, nor on a parallel course to its requests for interpretation or a zoning certificate, did MRA seek variances for relief from the requirements of Bill 91-10.

On 21 June 2002, MRA … petition[ed] the Circuit Court for Harford County for judicial review of the Board of Appeals's decision. The Circuit Court affirmed the decision of the Board of Appeals on 22 October 2003. It concluded that "all nine requests for interpretation were answered correctly … in accordance with the law, and based on substantial evidence, and the decision was also correct when it upheld the zoning administrator's denial of Maryland Reclamations request for a zoning certificate."

*MRA III*, 382 Md. at 360-61, 855 A.2d at 358. On appeal to this Court, we held that MRA again had failed to exhaust its available administrative remedies because it had not requested variances from the Code requirements at issue. *Id.* at 363, 855 A.2d at 359-60.

On May 12, 2005 MRA requested the following variances to provisions of the Harford County Zoning Code ("HCC") before the zoning hearing examiner for Harford County ("Hearing Examiner"):

- Variance pursuant to Section 267-28C to permit the disturbance of the 30 foot buffer yard.

- Variance pursuant to Section 267-28D(4) to permit disturbance within the 200 foot buffer from adjoining property lines.

- Variance to Section 267-40.1A, B, C, and D to permit the operation of a rubble landfill on less than 100 acres.

- Variance to Section 267-40.1A, B, C and D to permit the operation of a landfill without satisfying the buffer requirement.

- Variance to Section 267-40.1A, B, C, and D to permit the deposit of solid waste less than 500 feet from the flood plain district.

- Variance to Section 267-40.1A, B, C, and D to permit the disturbance of the 1,000 foot buffer from a residential or institutional building.

- Variances to Section 267-41D(2)(c); (3)(b); (5)(e); and (6) to permit the use of a landfill within a Natural Resource District, to permit the disturbance of the Natural resources District buffer, and to disturb the minimum 75 foot wetlands buffer in the Agricultural District.

Over a span of 10 months, the Hearing Examiner, Robert F. Kahoe, Jr., presided over 17 nights of hearings, during which he heard testimony from 11 witnesses produced by MRA (eight of whom were experts); six experts offered by the Protestants; 16 residents from the community and members of St. James parish; and the acting director of the Harford County Department of Planning and Zoning. The Hearing Examiner issued a decision dated February 28, 2007 that denied several of MRA's requests.

\* \* \*

MRA appealed the Hearing Examiner's decision to the Board. On June 5, 2007, the Board voted 7-0 to deny the requested variances to these sections of the Code, and adopted the Hearing Examiner's decision. MRA then noted an appeal to the Circuit Court for Harford County. The Circuit Court affirmed the findings of the Board of Appeals in an order filed on July 11, 2008.

*MRA IV*, *supra*, 414 Md. at 12-23.

12

Thereafter, MRA filed an additional petition for judicial review in the Circuit Court for Harford County. In its petition, MRA asked the circuit court to reconsider its October 2003 decision, in which it affirmed the Board of Appeals' interpretation of Bill 91-10, i.e., that Bill 91-10 applied to MRA. On September 3, 2008, the circuit court affirmed its 2003 decision. MRA then appealed both the circuit court's affirmance of its 2003 decision, and the variance denials to this Court. The Court of Appeals granted certiorari before we could review either appeal.

In *MRA IV*, the Court first addressed whether there was sufficient evidence in the record to support the Board of Appeals' findings that "the requested variances would be substantially detrimental to adjacent properties" and "would negatively affect the health and welfare of the individuals in the surrounding area." 414 Md. at 24, 33-34. Ultimately, the Court held that the record contained sufficient evidence to support those findings, and as a result, affirmed the Board of Appeals' 2007 decision. *Id.* at 34.

The Court then considered MRA's argument that it should be permitted to proceed with its project to operate a rubble landfill, notwithstanding the applicable zoning regulations. *Id.* at 34-35. Primarily through the lens of zoning estoppel and preemption, the Court held that MRA is subject to the zoning regulations. As a result, MRA could not operate a rubble landfill on the property. *Id.* at 34-64.

Following the decision of the Court of Appeals in *MRA IV*, on February 19, 2013, MRA commenced this inverse condemnation action in the Circuit Court for Harford County. In its complaint, as amended in June 2015, MRA alleged that the County's zoning laws interfered with MRA's "investment backed business expectations" to operate a rubble

13

landfill on its property, and that such interference constituted a regulatory taking under Article III, Section 40 of the Maryland Constitution, and Articles 19 and 24 of the Maryland Declaration of Rights.

Thereafter, the County filed both a motion to dismiss and a motion for summary judgment, arguing that MRA's takings claim was time-barred because it accrued in 2007, when MRA's requests for variances were denied by the Board of Appeals. In the alternative, the County asserted that it was entitled to judgment as a matter of law on a *per se* takings claim brought under the Supreme Court's decision in *Lucas*, *supra*, 505 U.S. 1003. In a memorandum opinion, Judge William O. Carr ruled that MRA's claim was timely because it accrued in 2010, when the Court of Appeals issued *MRA IV*. Judge Carr reasoned:

> Irrespective of whether inverse condemnation is a continuing cause of action, this claim satisfies the three year statute of limitations because this court finds that the final decision issued by the Court of Appeals in *MRA IV* on March 11, 2010 was the final decision which foreclosed on any possibility of using the property in question for rubble fill. The Plaintiff filed this case on February 19, 2013 making the date of filing within the statute of limitations.

Nevertheless, Judge Carr ruled that MRA could not proceed on a *per se* takings claim because the property, at that time, retained a resale value.

Thereafter, the case was tried before a jury in April 2018. At trial, an expert witness testified on behalf of MRA that the value of the property decreased by approximately $30 million after the alleged taking. After deliberating, the jury found in favor of MRA on its inverse condemnation claim and awarded damages in the amount of $45,420,076. This

amount accounted for $30,845,553 representing just compensation, plus $14,574,523 in interest. This timely appeal followed.

## STANDARD OF REVIEW

The County challenges both the circuit court's denial of a motion to dismiss and a motion for summary judgment on the grounds that MRA failed to exhaust its administrative remedies and that its inverse condemnation claim is time-barred.[5] To the extent that these rulings were premised on purely legal issues, we apply the same standard of review. "As the Court of Appeals has explained, where an order involves an interpretation and application of Maryland constitutional, statutory or case law, our Court must determine whether the trial court's conclusions are 'legally correct[.]'" *Elec. Gen. Corp. v. Labonte*, 229 Md. App. 187, 196 (2016) (citations and quotations omitted), *aff'd*, 454 Md. 113 (2017).

To determine whether the trial court's decision was legally correct, "we give no deference to the trial court findings and review the decision under a *de novo* standard of review." *Lamson v. Montgomery County*, 460 Md. 349, 360 (2018). We, therefore, shall review the merits of the County's exhaustion of administrative remedies and statute of limitations arguments *de novo*. In doing so, we evaluate the record in the light most favorable to MRA as the non-moving party. *Schneider Elec. Bldgs. Critical Sys., Inc. v. W. Surety Co.*, 454 Md. 698, 705 (2017).

---

[5] Although the County raises additional arguments in this appeal that may be subject to differing standards of review, we decline to address the merits of these arguments because we reverse on statute of limitations grounds. Consequently, we need not address the additional standards of review.

**DISCUSSION**

The County raises six arguments in this appeal. First, the County contends that the case should not have proceeded to trial because MRA failed to exhaust its administrative remedies. Second, the County argues that MRA's takings claim was filed outside the three-year limitations period because the County's last action taken against MRA was in 2007 and MRA filed its complaint in 2013. Third, the County maintains that MRA's claim is barred by *res judicata* and collateral estoppel. Fourth, and on the merits, the County asserts that MRA could not sufficiently allege an inverse condemnation claim because it did not have a vested property interest. Fifth, the County contends that the denial of MRA's requests for variances did not amount to an unconstitutional taking because the variances were denied to prevent public harm. Sixth, the County avers that MRA failed to present evidence of the property's fair market value and that the jury verdict was, therefore, defective. Conversely, MRA argues in its cross-appeal that the circuit court erred in granting the County judgment as a matter of law on its *per se* takings claim.

**I.**

We address the County's assertion that MRA failed to exhaust its administrative remedies first because issues concerning primary jurisdiction and exhaustion are treated like jurisdictional questions. *Bd. of Educ. for Dorchester Cty. v. Hubbard*, 305 Md. 774, 787 (1986); *Priester v. Baltimore County*, 232 Md. App. 178, 190 (2017), *cert. denied*, 454 Md. 670. The County alleges that MRA was required to raise its inverse condemnation claim in an administrative proceeding before it could seek just compensation in the circuit court. Accordingly, the County argues that the circuit court should have dismissed the

16

case. We disagree. As we shall explain, MRA adhered to the prescribed administrative procedure before filing its inverse condemnation claim in the circuit court.

"A fundamental precept of administrative law is the requirement that exclusive or primary administrative remedies ordinarily be exhausted before bringing an action in court." *MRA III*, *supra*, 382 Md. at 361. Administrative agencies have the first opportunity to consider constitutional issues when "those issues would be pertinent in the particular proceeding before the [agency]." *MRA II*, *supra*, 342 Md. at 491-92. Accordingly, circuit courts are not "authorized to entertain [those] actions" when a party circumvents a prescribed administrative procedure. *Hubbard*, *supra*, 305 Md. at 787.

This generally holds true in inverse condemnation cases. *See Prince George's County v. Blumberg*, 288 Md. 275, 293 (1980). Indeed, the Court of Appeals "has held on many occasions, when faced with a claim of an agency's unconstitutional taking of property, that such issues must still go through the administrative process, particularly when judicial review is provided." *Id.* Moreover, it is "settled law on principle and authority that, absent most unusual circumstances, in zoning matters where there is full opportunity for a property owner to apply to the administrative agency for a special exception from the application of the general law to the particular property, with adequate provision for judicial review of the Board's action, the court will not take jurisdiction even though a constitutional issue is raised, until the administrative remedy has been exhausted." *Poe v. City of Baltimore*, 241 Md. 303, 311 (1966).

In our view, MRA did not fail to exhaust its administrative remedies. Indeed, MRA sought a ruling from the Harford County Hearing Examiner and the Board of Appeals that

17

Bill 91-10 did not apply to MRA's property. When that failed, MRA appealed the Board of Appeals' decision to the circuit court, this Court, and the Court of Appeals. Thereafter, MRA sought another administrative remedy by requesting variances so that it could operate a rubble landfill on its property notwithstanding Bill 91-10. Both the Harford County Hearing Examiner and the Board of Appeals denied the requested variances, and MRA again appealed to the courts. Ultimately, the Court of Appeals held in *MRA IV*, *supra* that the Board of Appeals did not err in denying the requests for variances. To the extent that an administrative remedy was available, MRA clearly pursued it.

Moreover, the County presents us with no authority compelling a party to bring a claim for just compensation in an administrative forum before resorting to the courts.[6] In short, MRA's takings claim became justiciable after MRA was denied the requested variances. To hold otherwise would contradict case law from the United States Supreme Court. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 737 (1997) (observing that a takings claim is justiciable once "the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question") (citation omitted). The County arrived at a "final, definitive position" when

---

[6] Were we to adopt the County's argument and hold that MRA had not exhausted its administrative remedies, it is unclear how a claim for just compensation could ever get to a jury. Indeed, administrative rulings are subject to a deferential standard of review. Accordingly, subjecting a just compensation claim to such a deferential standard would seem to conflict with "Article III, § 40 of the Maryland Constitution[, which] provides the landowner with the opportunity to have a jury award just compensation in [takings] cases." *Montgomery County v. Soleimanzadeh*, 436 Md. 377, 387 (2013).

the Board denied MRA's requested variances in June 2007. We, therefore, hold that MRA exhausted its administrative remedies.

## II.

We next address the County's contention that MRA's inverse condemnation claim is time-barred. The County argues that the circuit court erred in ruling that MRA's claim accrued after the Court of Appeals issued its opinion in *MRA IV*, *supra*. The circuit court denied the County's motion to dismiss and motion for summary judgment, and ruled that MRA's inverse condemnation claim was timely filed. The time period in which an inverse condemnation claim must be filed is dictated by the Maryland Code:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time with which an action shall be commenced.

Md. Code (1973, 2013 Repl. Vol.), § 5-101 of the Courts and Judicial Proceedings Article ("CJ"). *See Electro-Nucleonics, Inc. v. Wash. Suburban Sanitary Comm'n*, 315 Md. 361, 374 (1989) (holding that CJ § 5-101 applies to inverse condemnation claims).

The rationale underlying the statute of limitations is well established:

> The adoption of statutes of limitation reflects a policy decision regarding what constitutes an adequate period of time for a person of reasonable diligence to pursue a claim. Such statutes are designed to balance the competing interests of each of the potential parties as well as the societal interests involved. Thus, one of the purposes of such statutes is to assure fairness to a potential defendant by providing a certain degree of repose. This is accomplished  by encouraging promptness in prosecuting actions; suppressing stale or fraudulent claims; avoiding inconvenience that may stem from delay, such as loss of evidence, fading of memories, and disappearance of witnesses; and providing the ability to plan for the future

19

> without the uncertainty inherent in potential liability. Another basic purpose is to prevent unfairness to potential plaintiffs exercising reasonable diligence in pursuing a claim. Still another purpose is to promote judicial economy.

*Poole v. Coakley & Williams Constr., Inc.*, 423 Md. 91, 130-31 (2011) (quoting *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 665 (1983)).

Accordingly, MRA had three years from the date its cause of action accrued to file a timely complaint. CJ § 5-101. We, therefore, must determine when MRA's inverse condemnation claim accrued. An inverse condemnation claim "accrues when the affected party knew or should have known of the unlawful action and its probable effect." *Duke St. Ltd. P'ship v. Bd. of Cty. Comm'rs of Calvert Cty.*, 112 Md. App. 37, 49 (1996) (citing *Millison v. Wilzack*, 77 Md. App. 676, 685-86 (1989)). Although the statute of limitations does not begin until the plaintiff discovers her claim, "[t]his does not mean that the party need know all relevant facts, including the precise nature and amount of the economic impact." *Id.* Rather, we must determine "when all of [the] elements [of an inverse condemnation claim] have occurred . . . and when the plaintiff knows, or, through the exercise of due diligence, should have known . . . that they have occurred." *Millison*, *supra*, 77 Md. App. at 685.

"To state a claim for inverse condemnation, a plaintiff must allege facts showing ordinarily that the government action constituted a taking." *Litz v. Md. Dep't of Env't*, 446 Md. 254, 267 (2016). "Thus, an inverse condemnation cause of action, at minimum, requires a taking by a government entity, and regardless of what the plaintiff knows or should know, the statute of limitations on an inverse condemnation cause of action does

20

not begin to run until a taking has occurred." *Litz v. Md. Dep't of Env't*, 434 Md. 623, 653 (2013). A taking may arise in several ways:

> [T]he denial by a governmental agency of access to one's property, regulatory actions that effectively deny an owner the physical or economically viable use of the property, conduct that causes a physical invasion of the property, hanging a credible and prolonged threat of condemnation over the property in a way that significantly diminishes its value, or, closer in point here, conduct that effectively forces an owner to sell.

*Litz*, *supra*, 446 Md. at 267 (quoting *Coll. Bowl, Inc. v. Mayor of Baltimore*, 394 Md. 482, 489 (2006)).

In its amended complaint, MRA alleges that the County -- by enacting various laws and modifying its zoning regulations -- unlawfully interfered with MRA's "investment backed business expectations associated with its Property and the rubble landfill permit previously issued" by the Maryland Department of the Environment (the "MDE"). *See* ¶ 55 of MRA's amended complaint. In short, MRA asserts that the County made it impossible to use the land for its intended purpose. MRA discovered the County's allegedly unlawful conduct no later than June 5, 2007, when the Board of Appeals voted unanimously to deny MRA's requests for variances. Without the variances, MRA could neither construct nor operate a rubble landfill on the property. Applying this logic, the County urges us to hold that the alleged taking occurred on June 5, 2007 and, therefore, the statute of limitations on MRA's inverse condemnation claim began to run on that date.

In support, the County cites *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by*

*Knick v. Township of Scott*, __ U.S. __, 139 S. Ct. 2162 (2019), for the proposition that a takings claim accrues when "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue."[7] The County further relies on the Court of Appeals' decision in *Arroyo v. Board of Education of Howard County*, 381 Md. 646, 672 (2004), which held that a plaintiff need not "obtain a final decision from the circuit court on judicial review before the administrative decision it reviewed can be considered a final administrative determination." Based on these cases, the County argues that the Board of Appeals' decision in 2007 to deny MRA's requests for variances constitutes the "final administrative decision" triggering the running of the statute of limitations in this case.

In response, MRA maintains that an inverse condemnation claim does not accrue until the taking becomes "permanent or stabilized." *See Litz*, *supra*, 434 Md. at 654. MRA contends that the alleged taking did not become permanent or stabilized until the Court of Appeals, in *MRA IV*, affirmed the Board's earlier decisions. Further, MRA relies on this Court's opinion in *Millison v. Wilzack*, 77 Md. App. 676 (1989), for the proposition that inverse condemnation claims are unlike other actions against administrative agencies,

_____

[7] On June 21, 2019 -- two weeks after oral argument in the instant case -- the United States Supreme Court overruled *Williamson*, in part. The Court held that a property owner need not seek just compensation in state court before bringing an inverse condemnation claim in federal court. *Knick*, 139 S. Ct. at 2179 ("The state-litigation requirement of *Williamson County* is overruled."). Nevertheless, the Court observed that the "finality requirement [set forth in *Williamson*] … is not at issue here." *Id.* at 2169. The Court further stated that *Williamson* "could have been resolved solely on the narrower and settled ground that no taking had occurred because the zoning board had not yet come to a final decision." *Id.* at 2174. The Court clearly noted that the finality requirement is "settled" and it, therefore, remains binding law.

because such claims do not accrue until disputed regulations are finally determined to be effective by a court. According to MRA, the County's reliance on *Arroyo*, *supra* is, therefore, misplaced. Finally, MRA asserts that even if *Arroyo* is applicable, the County's final administrative decision did not occur until July 2010, when the MDE declined to renew MRA's rubble landfill permit.

**A.    MRA's Inverse Condemnation Claim Accrued on the Date of the County's Final Administrative Decision.**

To determine the accrual date of MRA's cause of action, we start with the principle that a constitutional claim against a government entity "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n*, *supra*, 473 U.S. at 186. "Finality … occurs in the administrative sense when 'the order or decision [disposes] of the case by deciding all question[s] of law and fact and leave[s] nothing further for the administrative body to decide.'" *Shaarei Tfiloh Congregation v. Mayor of Baltimore*, 237 Md. App. 102, 128 (2018) (quoting *Willis v. Montgomery County*, 415 Md. 523, 535 (2010)).

The County asserts that in June 2007, the Board of Appeals reached a final decision on whether MRA could operate a rubble landfill on the property at issue. The County contends that MRA's claim accrued in 2007 and that it was, therefore, immaterial that the Court of Appeals had not yet affirmed or reversed the Board's decision. We agree. Indeed, MRA has not presented us with any authority to support the proposition that an inverse

23

condemnation claim is tolled or does not otherwise accrue until all judicial appeals have been exhausted.

The Court of Appeals was presented with a similar issue, albeit in a slightly different context, in *Arroyo*, *supra*, 381 Md. 646. In that case, an employee was terminated and subsequently challenged his termination through the prescribed administrative procedures in Howard County. *Id.* at 652-53. After the Maryland State Board of Education upheld the employee's termination in 1998, the employee petitioned for judicial review. *Id.* at 653. In 1999, the Circuit Court for Howard County affirmed the State Board's decision, and in 2000, we affirmed. *Id.* Two years later, the employee brought a civil suit against Howard County, alleging that he was wrongfully terminated. *Id.* In an attempt to evade the statute of limitations, the employee asserted that he did not have a cognizable claim until 2000, when judicial review was completed. *Id.* at 664-65.

The Court of Appeals disagreed. The Court specifically held that the employee's claim accrued when the State Board rendered its final decision, and not at the time when judicial review of that final decision was completed. *Id.* at 671-72 ("It was the act of the State Board, in its affirmance of the County Board's decision to terminate petitioner from his employment, that was the final decision of the administrative agency[.]") (emphasis omitted). *See also Watson v. Dorsey*, 265 Md. 509 (1972) (holding that a legal malpractice claim accrued when the plaintiffs lost their case at trial, and not at the point in time when the trial court's decision was later affirmed on appeal); *Edwards v. Demedis*, 118 Md. App.

24

541, 557 (1997) (stating that it is "not consistent with Maryland law" to hold that a cause of action accrues only after "the resolution of any subsequent appeal").[8]

In our view, MRA's inverse condemnation claim accrued on June 5, 2007, when the Board of Appeals issued its final decision denying MRA's requests for variances. It was on that date that MRA discovered the alleged taking of its property. *See Coll. Bowl, Inc. v. Mayor of Baltimore*, 394 Md. 482, 489 (2006) (observing that a taking may arise when there are "regulatory actions that effectively deny an owner the physical or economically viable use of the property"). Although MRA appealed the Board's final decision to the circuit court and ultimately the Court of Appeals, MRA's appeal did not delay the accrual of its claim. Indeed, the Court of Appeals explicitly rejected such a notion in *Arroyo*, *supra*. Critically, the Court of Appeals held in *Arroyo* that a claim against an administrative agency accrues when the agency -- or some administrative review board -- renders its final decision, and not at the time when judicial review of that final decision is completed. *Arroyo*, *supra*, 381 Md. at 671-72.

MRA endeavors to distinguish *Arroyo* by asserting that it involved an employment dispute and is inapplicable to takings cases. We disagree. Indeed, there is no language in the Court of Appeals' opinion expressly limiting its decision to employment cases. Notably, the Court of Appeals has cited *Arroyo* in other contexts, including land use cases.

---

[8] Our research -- thorough we trust -- has found only one type of claim that accrues when judicial review is completed. *See, e.g.*, *Heron v. Strader*, 361 Md. 258, 265, 270 (2000) (holding that malicious prosecution claims, unlike claims of false arrest and false imprisonment, arise when the underlying criminal proceedings terminate because favorable termination is a required element). Inverse condemnation claims, by contrast, contain no such requirement.

25

*See, e.g.*, *City of Bowie v. Prince George's County*, 384 Md. 413, 435 (2004) ("Our *Arroyo* holding, although involving very different facts, a different procedural situation, and directed to different legal doctrines, illustrates the trial court's need to remain cognizant of the running of a period for further action, be it judicial or administrative, during the pendency of judicial and administrative review processes.").

MRA further asserts that the County's reliance on *Arroyo* is misplaced because "the administrative procedure in *Arroyo* differs significantly from that provided by the Harford County Code." The Harford County Code provides that an "appeal stays all proceedings in furtherance of the action appealed." Harford Cty. Zoning Code, Chapter 267, § 267-9(J). According to MRA, this provision establishes that the Board's June 2007 decision was automatically stayed, and as a result, not final. We disagree. Section 267-9(J) allegedly stayed any subsequent administrative actions or proceedings, but there were no additional administrative proceedings to stay. Indeed, on June 5, 2007, the Harford County Board of Appeals made its position clear: it would not allow MRA to operate a rubble landfill on its property. The County's decision was final as there was "nothing further for the agency to do." *Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 75 (2003) (citations, quotations, and emphasis omitted).

In the alternative, MRA asserts that even if *Arroyo* is applicable, the final administrative action did not occur until 2010, when the MDE declined to renew MRA's permit to operate a landfill. We disagree. Indeed, the MDE's decision was premised entirely on *MRA IV*, in which the Court of Appeals affirmed the Board's earlier denial of the variance requests. In short, the MDE's decision constitutes the "continuing effects of

26

a single earlier act[,]" which is insufficient to delay the limitations period. *Mills v. Galyn Manor Homeowner's Ass'n, Inc.*, 239 Md. App. 663, 683 (2018) (citations and quotations omitted), *cert. granted on other grounds sub nom.*, *Andrews & Lawrence Prof'l Servs., LLC v. Mills*, 463 Md. 523 (2019); *Duke St. Ltd. P'ship*, *supra*, 112 Md. App. at 48 ("While there may have been continuing ill effects from the original alleged violation, there was not a series of acts or course of conduct by appellee that would delay the accrual of a cause of action to a later date.") (emphasis omitted).

Moreover, we are not persuaded by MRA's reliance on *Millison v. Wilzack*, 77 Md. App. 676 (1989). According to MRA, this Court held in *Millison* that an inverse condemnation claim does not accrue until a court concludes that challenged regulations are effective. We disagree. In *Millison*, a landowner purchased property in 1966 with plans to subdivide the property. 77 Md. App. at 679. Thereafter, in 1972, the Maryland State Department of Health and Mental Hygiene (the "Department") promulgated regulations providing that "a preliminary plan would become null and void if a record plat or subdivision plan is not filed within six months of its approval." *Id.* For plans that were approved before 1972, however, landowners would have six months from the date the regulations were adopted to record their plans. *Id.*

After the landowner failed to file the plan within the prescribed six-month period, the Department sought a declaration that the landowner's untimely recorded subdivision plan was null and void. *Id.* The circuit court ruled that the regulations were inapplicable to the property and declared the subdivision plan valid. *Id.* at 680. On appeal, this Court reversed and held that the regulations applied to the property and that the circuit court

27

should have declared the plan null and void. *Id.* (citing *Millison v. Sec. of Health & Mental Hygiene*, 32 Md. App. 165, 173-74 (1976)). As a result, the landowner's plan was expunged. *Id.*

In 1987, eleven years later, the landowner brought an inverse condemnation suit against the Department. *Id.* On appeal, this Court held that the landowner's claim was time-barred because the complaint was filed more than three years after the alleged taking occurred. *Id.* at 688. This Court explained:

> There is, in this case, no question raised concerning when the regulations, which form the basis for appellant's claim that his property was taken, were promulgated or finally determined to be effective. Nor is there a question concerning when appellant became aware of the impact of the regulations upon his property. As to the former, the record is clear that the regulations were promulgated in 1972. They were finally determined to be effective in 1976, either when this Court's decision in *Millison I* was filed, the Court of Appeals having denied certiorari that same year, or when, pursuant to that Opinion, appellant's subdivision plan was expunged from the Land Records on August 2, 1976. Appellant does not argue here, as, indeed, he could not, that he was not aware, at least as early as August 2, 1976, of the effect of the regulations on his property.

*Id.* at 686.

In our view, *Millison* does not, as MRA argues, stand for the proposition that an inverse condemnation claim accrues only after judicial review is exhausted. Such a holding would contradict the Court of Appeals' more recent decision in *Arroyo*, *supra*, 381 Md. 646. More importantly, whether the claim accrued in 1972 -- when the regulations were promulgated -- or in 1976 -- when the Court of Appeals denied certiorari -- was ultimately irrelevant. Indeed, the landowner sued in 1987 and both dates were well outside the three-

28

year limitations period. As a result, our discussion of when the takings claim accrued was not essential to the disposition of the case. It, therefore, carries no binding effect. *See Smith v. Wakefield, LP*, 462 Md. 713, 720, 736 (2019) (observing that a general expression in an opinion, which is not essential to the disposition of the case -- i.e., dictum -- is not controlling in subsequent cases); *see also Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) ("The broad language … relied upon by petitioners was unnecessary to the Court's decision, and cannot be considered binding authority."). We, therefore, hold that MRA's inverse condemnation claim accrued on June 5, 2007, when the Board of Appeals issued its final decision denying MRA's requests for variances.

Finally, we observe that our holding will not lead to the improbable scenario where an inverse condemnation claim does not become justiciable until after the statute of limitations has run. Notably, the Court of Appeals has quelled such a concern. Indeed, the Court has routinely observed that when a claim is not yet justiciable because of a pending administrative action or appeal, the circuit court should stay the case until the pending appeal is decided. *See Monarch Acad. Balt. Campus, Inc. v. Balt. City Bd. of Sch. Comm'rs*, 457 Md. 1, 13 (2017); *Powell v. Breslin*, 430 Md. 52, 67-70 (2013); *MRA III*, *supra*, 382 Md. at 362 (holding that when one case cannot be adjudicated because the other is pending or on appeal, a stay of one proceeding is the appropriate course of action).

Accordingly, even if MRA's inverse condemnation claim was not yet ripe because of the pending appeal in *MRA IV*, MRA could have filed its claim within the limitations

period to ensure that its claim was timely.[9]  The circuit court, if necessary, could have then stayed the case to await the Court of Appeals' decision.  *See, e.g.*, *Am. Home Assurance Co. v. Osbourn*, 47 Md. App. 73, 87 (1980) ("[A]ppellant could have filed his action … within the requisite three year time period and the action could have been stayed pending the outcome of the declaratory judgment suit.").  Instead, MRA filed its claim nearly six years after it discovered the alleged taking.  We, therefore, hold -- as a matter of law -- that MRA's claim is barred by the statute of limitations.

## B.     MRA's Inverse Condemnation Claim Became Permanent and Stabilized When the Board Issued its Final Decision.

To avoid the effect of the statute of limitations, MRA next argues that its inverse condemnation claim did not become "permanent or stabilized" until the Court of Appeals issued *MRA IV* in 2010.  As discussed, *supra*, constitutional claims against administrative agencies ordinarily accrue when the agency renders a final administrative decision.  *See Williamson Cty. Reg'l Planning Comm'n*, *supra*, 473 U.S. at 186.  Nevertheless, MRA urges us to disregard this well-established principle by extending the Court of Appeals' narrowly tailored holding in *Litz*, *supra*, 434 Md. 623.  MRA relies on *Litz* for the proposition that a regulatory taking cannot become "permanent or stabilized" until an agency's final decision is affirmed by a court.  We disagree.  Indeed, the *Litz* Court did not consider what effect, if any, a judicial appeal has on a regulatory takings claim.

---

[9] It is noteworthy that MRA still had nearly three months to file its complaint after *MRA IV* was reported.  Indeed, the Court issued *MRA IV* on March 11, 2010 and the limitations period did not close until June 5, 2010.

In *Litz*, a landowner brought an inverse condemnation claim against the government, alleging that the government failed to remedy continuous sewage and wastewater discharges into a lake. 434 Md. at 631-33. Ultimately, the incessant pollution adversely affected the landowner's nearby property to the point that the property was foreclosed on years later. *Id.* at 633. In opposition, the government asserted that the landowner's claim was time-barred because the foreclosure occurred several years after the landowner discovered the pollution. *Id.* at 636. The trial court agreed and dismissed the case. *Id.*

On appeal, the landowner urged the Court of Appeals to reverse, arguing that the unconstitutional taking did not become permanent or stabilized until her property was sold at a foreclosure auction. *Id.* at 651. Based on the allegations in the complaint, the Court held that "a reasonable trier of fact could conclude that the final, complete taking of Litz's property occurred [at the foreclosure sale], and is not time-barred by the three-year statutory period." *Id.* at 656.

In reaching its holding, the Court of Appeals noted that "[a] complete taking … [does not occur] and the statute of limitations does not begin to run until the taking becomes permanent or stabilized." 434 Md. at 654. In doing so, the Court cited *United States v. Dickinson*, 331 U.S. 745 (1947), in which the United States Supreme Court held that a taking is not complete "until the full extent of the taking could be ascertained." *Id.* (citing *Dickinson*, *supra*, 331 U.S. at 749). The *Litz* Court summarized *Dickinson* as follows:

> In [*Dickinson*], a cause of action was brought after the government built a dam that caused the water level in a river to rise over the course of several years, resulting in the flooding of Dickinson's property. [331 U.S. at 746-47.] The Supreme Court noted that "[t]he source of the entire claim—the

31

overflow due to rises in the level of the river—is not a single event; it is continuous[, a]nd as there is nothing in reason, so there is nothing in legal doctrine, to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized." [331 U.S. at 749.]

The Supreme Court further clarified that "when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really 'taken.'" [331 U.S. at 749.]

*Litz*, *supra*, 434 Md. at 654-55.

The *Litz* Court then relied on case law from the United States Court of Appeals for the Federal Circuit, observing that the Federal Circuit "has illuminated the current state of the 'stabilization' concept[.]" *Id.* at 655. The Court provided the following quotation from the Federal Circuit's decision in *Boling v. United States*, 220 F.3d 1365 (Fed. Cir. 2000):

[S]tablization occurs when it becomes clear that the gradual process set into motion by the government has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined. Thus, during the time when it is uncertain whether the gradual process will result in a permanent taking, the plaintiff need not sue, but once it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run.

*Litz*, *supra*, 434 Md. at 655 (quoting *Boling*, *supra*, 220 F.3d at 1370-71).

Critically, however, the Federal Circuit has made clear that the rule announced by the Supreme Court in *Dickinson* is generally limited to gradual physical processes such as flooding. *See, e.g.*, *Mildenberger v. United States*, 643 F.3d 938, 945 (Fed. Cir. 2011) ("The stabilization doctrine recognizes that determining the exact point of claim accrual is

32

difficult when the property is taken by a gradual physical process rather than a discrete action undertaken by the Government such as a condemnation or regulation."); *Goodrich v. United States*, 434 F.3d 1329, 1334-36 (Fed. Cir. 2006) (holding that the "stabilization principle" is not applicable in regulatory takings actions because a regulatory takings claim accrues on the date of the agency's final regulatory decision); *Fallini v. United States*, 56 F.3d 1378, 1381 (Fed. Cir. 1995) (observing that the Supreme Court has "more or less limited [*Dickinson*] to the class of flooding cases to which it belonged") (citations and quotations omitted).[10] In *Fallini*, the Federal Circuit illustrated when regulatory takings claims accrue through the following hypothetical:

> If a landowner owns a parcel of beachfront property and the government enacts legislation demanding that the landowner allow others to walk along the shore, the government has effected a taking of an easement on the landowner's property.
>
> * * *
>
> For purposes of claim accrual, such a taking occurs on the date of enactment of the legislation.

*Fallini*, *supra*, 56 F.3d at 1382-83. In short, in reviewing whether a regulatory takings claim is time-barred, the Federal Circuit -- like the Court of Appeals in *Arroyo*, *supra*, 381 Md. 646 -- looks to the date that an administrative agency renders a final decision.

---

[10] MRA cites to the United States Supreme Court's decision in *Arkansas Game & Fish Commission v. United States*, 568 U.S. 23, 36 (2012), for the proposition that the stabilization principle applies to regulatory takings claims as well as physical takings. In that case, the Supreme Court was not tasked with determining when a takings claim accrues. Moreover, the Supreme Court did not discuss the stabilization principle. Rather, the Court rejected the government's plea to categorically exclude flooding cases from the Fifth Amendment, holding that there is "no solid grounding in precedent for setting flooding apart from all other government intrusions on property." 568 U.S. at 36.

33

*Goodrich*, *supra*, 434 F.3d at 1336 ("Thus, we conclude that the issuance of a [record of decision] and final [environmental impact statement] is sufficient to constitute the taking and hence accrue a takings claim, regardless of when the consequences of the decisions contained therein are felt.").

Notably, our holding is consistent with the prevailing law across the country. *See, e.g.*, *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 657 (9th Cir. 2003) (holding that an as-applied regulatory takings claim ripened when the agency rendered a final decision because "there [were] no further [administrative] procedures available to [the plaintiff] to challenge that decision short of resort to state courts for a writ of administrative mandamus"); *Wellswood Columbia, LLC v. Town of Hebron*, 171 A.3d 409, 421 (Conn. 2017) ("[T]he denial of a variance by a zoning board of appeals is considered a final decision by an initial decision maker, which is all that is required to establish finality in order to bring a takings claim, and that once the zoning board of appeals makes its decision, the regulatory activity is final for purposes of an inverse condemnation claim[.]") (citations and quotations omitted); *Scott v. Sioux City*, 432 N.W.2d 144, 148 (Iowa 1988) ("Although damages for flooding and physical invasion can occur intermittently over the passage of time, in this case, the passage of the permanent ordinance had immediate adverse economic consequences for plaintiffs."); *Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 135 (Tex. App. 2013) ("[A]n as-applied [regulatory takings] claim is not ripe until *the regulatory authority* has made a final decision regarding the application of the regulation to the property.") (emphasis added).

Accordingly, to the extent that the stabilization principle applies in regulatory takings actions, we hold that, under the circumstances of this case, the alleged taking of MRA's property occurred on June 5, 2007, when the Board of Appeals denied MRA's requests for variances. In our view, the alleged taking had clearly "stabilized" within the meaning of *Dickinson*, because, as of that date, it was abundantly clear that the County would not permit MRA to operate a rubble landfill. MRA's alleged damages may have been reduced if the Court in *MRA IV* reversed the Board's decision. Nevertheless, the mere fact that damages may fluctuate does not operate to delay the accrual date of MRA's claim. Indeed, for a takings claim to accrue, "[i]t is not necessary for the precise extent of the loss to be known[.]" *Duke St. Ltd. P'ship*, *supra*, 112 Md. App. at 48. We, therefore, hold that MRA's inverse condemnation claim accrued in 2007 and is time-barred.

In sum, the Harford County Board of Appeals rendered its final decision proscribing MRA from operating a rubble landfill on the property at issue on June 5, 2007, when it denied MRA's requests for variances. Consequently, MRA's inverse condemnation claim accrued on that date. Because MRA did not file its complaint until February 2013 -- nearly six years later -- its cause of action is barred by the statute of limitations.[11] The circuit court, therefore, erred in permitting the claim to proceed to trial.[12] Accordingly, we reverse

---

[11] MRA's *per se* takings claim is time-barred for the same reasons.

[12] In light of our holding that MRA's inverse condemnation claim is time-barred, we need not consider either the County's alternative arguments for vacating the judgment or MRA's cross-appeal.

MRA's judgment of $45,420,076 and remand the case for the circuit court to enter judgment in favor of the County.

We are well aware that we are vacating a significant judgment rendered against the County. Nevertheless, because the cause of action accrued in this case more than three years before MRA filed its inverse condemnation claim, the statute of limitations mandates that its judgment be reversed. Indeed, Maryland "courts are required to enforce the Statute of Limitations as adopted by the Legislature and have no authority to create an unauthorized exception[.]" *Sheng Bi v. Gibson*, 205 Md. App. 263, 269 (2012) (citations omitted).

**JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR ENTRY OF JUDGMENT IN FAVOR OF HARFORD COUNTY, MARYLAND. COSTS TO BE PAID BY APPELLEE.**